Mason A. Barney (admitted *pro hac vice*)
Tyler J. Bean (admitted *pro hac vice*)
**SIRI & GLIMSTAD LLP**
745 Fifth Avenue, Suite 500
New York, New York 10151
Tel: (212) 532-1091
E: dmazoff@sirillp.com
E: mbarney@sirillp.com
E: tbean@sirillp.com

A. Brooke Murphy (admitted *pro hac vice*)
**MURPHY LAW FIRM**
4116 Will Rogers Pkwy, Suite 700
Oklahoma City, OK 73108
T: (405) 389-4989
E: abm@murphylegalfirm.com

William B. Federman (admitted *pro hac vice*)
**FEDERMAN & SHERWOOD**
10205 N. Pennsylvania Ave.
Oklahoma City, OK 73120
T: (405) 235-1560
E: wbf@federmanlaw.com

Counsel for Plaintiffs and the Proposed Class

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| AMANDA PEREZ, et al., individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>v.<br><br>CARVIN WILSON SOFTWARE, LLC d/b/a CARVIN SOFTWARE, LLC<br><br>        Defendant. | Case No.: 2:23-CV-00792-SMM<br><br>Consolidated with:<br><br>2:23-cv-00808; 2:23-cv-00824; 2:23-cv-00828; 2:23-cv-00845<br><br>**UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND MEMORANDUM IN SUPPORT** |

# TABLE OF CONTENTS

I.  INTRODUCTION ................................................................................................ 1

II.  STATEMENT OF FACTS .................................................................................. 1

III.  PROCEDURAL HISTORY ................................................................................ 1

IV.  THE SETTLEMENT TERMS ........................................................................... 2

    A.  Proposed Settlement Class .................................................................... 2

    B.  Settlement Benefits ................................................................................ 2

    C.  Class Notice and Settlement Administration ......................................... 3

    D.  Attorneys' Fees and Expenses ............................................................... 3

    E.  Service Awards to Named Plaintiffs ...................................................... 4

V.  LEGAL AUTHORITY ....................................................................................... 4

VI.  ARGUMENT ..................................................................................................... 5

    A.  The Settlement Satisfies Rule 23(a) ...................................................... 5

        1.  The proposed Class is sufficiently numerous ............................... 5

        2.  The Settlement Class Satisfies Commonality ............................... 6

        3.  Plaintiffs' Claims Are Typical to Those of the Class ................... 6

        4.  Plaintiffs Will Adequately Protect the Interests of the Class ........................................................................................... 6

    B.  The Requirements of Rule 23(b)(3) Are Met for Purposes of Settlement .............................................................................................. 7

    C.  The Settlement Should Be Preliminarily Approved Pursuant to Rule 23(e). ............................................................................................. 8

        1.  The Strength of Plaintiffs' Case .................................................. 9

        2.  The Risk, Expense, Complexity, and Likely Duration of Further Litigation ....................................................................... 10

        3.  The Risk of Maintaining Class Action Status Through Trial .......................................................................................... 11

4.  The Amount Offered in Settlement ................................... 11

5.  The Extent of Discovery Completed and the Stage of
    Proceedings ......................................................................... 13

6.  The Experience and Views of Counsel ............................. 13

7.  Governmental Participants. .............................................. 14

8.  The Reaction of the Class Members to the Proposed
    Settlement ............................................................................ 14

9.  Lack of Collusion Among the Parties ............................... 14

10. The Settlement Treats Settlement Class Members
    Equitably ............................................................................. 14

VII.  THE COURT SHOULD APPROVE THE PROPOSED NOTICE
PROGRAM ......................................................................................... 15

A.  Appointment of the Settlement Administrator ............................. 17

B.  Appointment of Settlement Class Counsel ................................. 17

VIII.  CONCLUSION ................................................................................. 17

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

1
2

# <u>TABLE OF AUTHORITIES</u>

3

**CASES**

4

*Adlouni v. UCLA Health Systems Auxiliary, et al.,*

5

   No. BC 589243 (Cal. Super. Ct. June 28, 2019) ............................................................ 12

6

*Amchem Prod., Inc. v. Windsor,*

7

   521 U.S. 591 (1997) ....................................................................................................... 5, 7

8

*Bykov v. DC Trans. Services, Inc.,*

9

   No. 2:18-cv-1692, 2019 WL 1430984 (E.D. Cal. Mar. 29, 2019) ................................... 8

10

*Calderon v. Wolf Firm,*

11

   No. SACV 16-1622-JLS(KESx), 2018 WL 6843723 (C.D. Cal. Mar. 13, 2018) ......... 12

12

*Chester v. TJX Cos.,*

13

   No. 5:15-cv-01437-ODW(DTB), 2017 WL 6205788 (C.D. Cal. Dec. 5, 2017). ............ 9

14

*Class Plaintiffs v. City of Seattle,*

15

   955 F.2d 1268 (9th Cir. 1992) ........................................................................................ 5

16

*Cochran v. Accellion, Inc., et al.,*

17

   No. 5:21-cv-01887 (N.D. Cal.) (June 30, 2021) ........................................................... 12

18

*Compare Roes 1-2 v. SFBSC Management LLC,*

19

   944 F.3d 1035 (9th Cir. 2019). ..................................................................................... 16

20

*Dennis v. Kellogg Co.,*

21

   No. 09-cv-1786-L(WMc), 2013 WL 6055326 (S.D. Cal. Nov. 14, 2013) ..................... 9

22

*Dickey's Barbeque Restaurants, Inc.,*

23

   No. 20-cv-3424 (N.D. Tex.) ......................................................................................... 12

24

*Eisen v. Carlisle & Jacquelin,*

25

   417 U.S. 156 (1974). ..................................................................................................... 15

26

*Ellis v. Costco Wholesale Corp.,*

27

   657 F.3d 970 (9th Cir. 2011) ....................................................................................... 5, 7

*Fehlen v. Accellion, Inc.*,

    No. 21-cv-01353 (N.D. Cal.) ............................................................................. 12

*Franklin v. Kaypro Corp.*,

    884 F.2d 1222 (9th Cir. 1989) ............................................................................. 9

*Grimm v. American Eagle Airlines, Inc.*,

    No. LA CV 11-00406 JAK(MANx), 2014 WL 1274376 (C.D. Cal. Sept. 24, 2014)... 11

*Hammond v. The Bank of N.Y. Mellon Corp.*,

    No. 08 Civ. 6060 (RMB) (RLE), 2010 U.S. Dist. LEXIS 71996 (S.D.N.Y. June 25,

    2010) ................................................................................................................... 10

*Hanlon v. Chrysler Corp.*,

    150 F.3d 1011 (9th Cir. 1998) ......................................................................... 7, 9

*Hartranft v. TVI, Inc.*,

    No. 15-01081-CJC-DFM, 2019 WL 1746137 (C.D. Cal. Apr. 18, 2019) ................... 16

*Holly v. Alta Newport Hospital*,

    No.2:19-cv-07496, 2020 WL 1853308 (April 10, 2020) ........................................ 5

*Hudson v. Libre Technology Inc.*,

    No. 3:18-cv-1371-GPC-KSC, 2020 WL 2467060 (S.D. Cal. May 13, 2020) .............. 14

*In re Anthem, Inc. Data Breach Litig.*,

    No. 5:15-md-02617 (N.D. Cal. Aug. 15, 2018) .................................................. 12

*In re Bluetooth Headset Prods. Liab. Litig.*,

    654 F.3d 935 (9th Cir. 2011) ............................................................................. 9

*In re Brinker Data Incident Litig.*,

    No. 3:18-CV-686-TJC-MCR, 2021 WL 1405508 (M.D. Fla. Apr. 14, 2021) ............. 11

*In re Hyundai & Kia Fuel Econ. Litig.*,

    926 F.3d 539 (9th Cir. 2019) ........................................................................... 15

*In re LinkedIn User Priv. Litig.*,

    309 F.R.D. 573 (N.D. Cal. 2015) ................................................................. 12

*In re Mego Fin. Corp. Sec. Litig.*,

    213 F.3d 454 (9th Cir. 2000) ......................................................................... 4

*In re Online DVD-Rental Antitrust Litig.*,

    779 F. 3d 934 (9th Cir. 2015) ...................................................................... 16

*In re Target Corp. Customer Data Sec. Breach Litig.*,

    MDL No. 14-2522, 2017 WL 2178306(D. Minn. May 17, 2017) ............................... 12

*In re The Home Depot, Inc. Customer Data Sec. Breach Litig.*,

    No. 1:14-MD02583, 2016 WL 6902351 (N.D. Ga. Aug. 23, 2016) ........................... 12

*In re the Home Depot, Inc., Customer Data Sec. Breach Litig.*,

    No. 1:14-MD-02583-TWT, 2016 WL 6902351 (N.D. Ga. Aug. 23, 2016) ................... 6

*In re U.S. Office of Pers. Mgmt. Data Sec. Breach Litig.*,

    266 F. Supp. 3d 1 (D.D.C. 2017) ................................................................. 10

*In re: Capital One Consumer Data Breach Litigation*,

    MDL No. 1:19md2915 (AJT/JFA) ................................................................. 12

*Just Film, Inc. v. Buono*,

    847 F.3d 1108 (9th Cir. 2017) ..................................................................... 6

*Linney v. Cellular  Alaska P'ship*,

    151 F.3d 1234 (9th Cir. 1998). ................................................................... 13

*Malta v. Fed. Home Loan Mortg. Corp.*,

    No. 10-CV-1290 BEN NLS, 2013 WL 444619 (S.D. Cal. Feb. 5, 2013) ..................... 8

*Meyer v Portfolio Recovery Associates*,

    707 F.3d 943 (9th Cir. 2012) ..................................................................... 6

*Nat'l Rural Telecomm. Coop. v. DirecTV, Inc.*,

    221 F.R.D. 523 (C.D. Cal. 2004). ................................................................ 13

*Norton v. Maximus, Inc.*,

No. CV 1:14-0030 WBS, 2017 WL 1424636 (D. Idaho Apr. 17, 2017)......................13

*Ogbuehi v. Comcast of Cal./Colo./Fla./Or., Inc.*,

   303 F.R.D. 337 (E.D. Cal. 2014). ..................................................................14

*Orantes-Hernandez v. Smith*,

   541 F. Supp. 351 (C.D. Cal. 1982) ................................................................5

*Pauley v. CF Ent.*,

   No. 2:13-CV-08011-RGK-CW, 2020 WL 5809953 (C.D. Cal. July 23, 2020).............4

*Paz v. AG Adriano Goldschmeid, Inc.*,

   No. 14-CV-1372, 2016 WL 4427439 (S.D. Cal. Feb. 29, 2016)..................................11

*Phillips Petroleum Co. v. Shutts*,

   472 U.S. 797 (1985) ......................................................................15

*Reyes v. Experian Info. Sols., Inc.*,

   No. SACV1600563AGAFMX, 2020 WL 466638 (C.D. Cal. Jan. 27, 2020). ...............8

*Smith v. Triad of Ala.*, LLC,

   No. 1:14-CV-324-WKW, 2017 U.S. Dist. LEXIS 38574 (M.D. Ala. Mar. 17, 2017)..11

*Spencer v. #1 A LifeSafer of Ariz., LLC*,

   No. CV-18-02225-PHX-BSB, 2019 WL 1034451 (D. Ariz. Mar. 4, 2019) ................16

*Tyson Foods, Inc. v. Bouaphakeo*,

   136 S. Ct. 1036 (2016).......................................................................7

*Wal-Mart Stores, Inc. v. Dukes*,

   564 U.S. 338 (2011) ........................................................................6

*Wolin v. Jaguar Land Rover N. Am., LLC*,

   617 F.3d 1168 (9th Cir. 2010) ................................................................7

**RULES**

Federal Rule Civil Procedure 23 ................................................................passim

**TREATISES**

4 Newberg on Class Actions § 11.41 (4th ed. 2002)..........................................................5

*Manual for Complex Litigation (Fourth)* (2004) § 21.63 ...................................................4

Manual for Complex Litigation (Fourth), § 21.632 ...........................................................5

## I.    INTRODUCTION

Plaintiffs Amanda Perez, Sasha Lipp, James Murray, Michael Halpren and Elijah Johnson (collectively, "Plaintiffs") submit this Motion for Preliminary Approval of Class Action Settlement and Memorandum in Support. Defendant Carvin Wilson Software, LLC d/b/a Carvin Software, LLC ("Carvin" or "Defendant") does not oppose the relief requested in this Motion. For the reasons set forth herein, the Settlement is fair, reasonable and adequate, the Court should grant preliminary approval.

## II.    STATEMENT OF FACTS

This litigation arises from a data security incident that took place on Defendant Carvin's systems between February 22, 2023 and March 9, 2023 (the "Data Incident") through which unauthorized cybercriminals gained access to certain files containing Plaintiffs' and Class Members' Social Security numbers and financial account information (the "Private Information"). Plaintiffs allege that as a result of the Data Incident, the cybercriminals gained access to, and copied, Plaintiffs' and the Settlement Class Members' Private Information from its network.

Upon discovering the Data Incident, Carvin notified approximately 189,319 individuals that their Private Information may have been exposed in the Data Incident, offering them free credit monitoring services for a 12-month period. These individuals, including Plaintiffs, received notices in or around early May of 2023.

## III.    PROCEDURAL HISTORY

Plaintiffs each filed class action lawsuits against Carvin based on its unlawful disclosure of their highly sensitive Private Information. On May 8, 2023, *Perez v. Carvin Wilson Software, LLC d/b/a Carvin Software, LLC*, No. 2:23-cv-00792-SMM was filed. Subsequently, *Locke, et al. v. Carvin Wilson Software, LLC d/b/a Carvin Software, LLC*, No. 2:23-cv-00808-SRB, *Mital, et al v. Carvin Wilson Software, LLC d/b/a Carvin Software, LLC*, No. 2:23-cv-00824, *Boyles v. Carvin Wilson Software, LLC d/b/a Carvin Software, LLC*, No. 2:23-cv-00828-SRB, and *Halpren v. Carvin Wilson Software, LLC*, No. 2:23-cv-00845-DWL were also filed. On June 28, 2023, the Court consolidated these

actions, and on August 4, 2023, the consolidated plaintiffs filed their Consolidated Class Action Complaint, asserting seven (7) causes of action against Carvin on behalf of themselves, a nationwide class, and California and Tennessee subclasses.

On January 12, 2024, after an informal exchange of discovery requests, information, and production of documents by Carvin to Plaintiffs and their counsel, the Parties participated in a full day mediation before experienced mediator, Christopher Griffin of Griffin Mediation. The Parties were able to reach a settlement, which is memorialized in the settlement agreement and attached exhibits (collectively, the "Settlement" or "Settlement Agreement") attached hereto as Exhibit 1.

## IV.    THE SETTLEMENT TERMS

### A.  Proposed Settlement Class

The Settlement will provide relief for the following Settlement Class: "all individuals in the United States and its Territories whose Personal Information was identified by Defendant as having been potentially exposed in the Data Breach, consisting of 189,319 individuals." S.A. § 1.43.   Excluded from the Settlement Class are (i) Defendant and its officers, directors, representatives, affiliates, parents, and subsidiaries; (ii) all Settlement Class Members who timely and validly submit a Request for Exclusion; (iii) any judge, justice, or judicial officer presiding over this Action and the members of their immediate families and judicial staff; and (iv) any members or employees of Defendant Counsel or Lead Counsel." *Id*.

### B.  Settlement Benefits

The Settlement provides a favorable result for the Settlement Class in the form of two components: (1) a $825,000.00 non-reversionary Settlement Fund, from which Settlement Relief will be provided to participating Settlement Class Members, and (2) remedial measures that have a total cost of $700,000.00. Thus, the Settlement secures Settlement Consideration of $1,525,000.00 for the benefit of the Class. *Id*. § 1.48.

Under the Settlement, all Class Members are eligible to submit a claim to receive one or more of the following categories of Settlement Relief, which shall be paid or

funded out of the Settlement Fund: (a) reimbursement of time spent responding to the Data Breach up to four (4) hours at the rate of twenty dollars ($20.00) per hour; (b) up to $8,500.00 per Settlement Class Member, for reimbursement of Out-of-Pocket Losses incurred as a result of the Data Breach; (c) two years of Identity Theft and Credit Monitoring Services; a *Pro Rata* Cash Payment, the amount of which will be determined by the number of claims submitted. *Id*. §§ 3.1–4.

In addition, the Settlement requires Defendant to implement and/or maintain remedial data security improvements designed to help protect Defendant from a future data breach. *Id*. § 7.1. The total cost of such remedial measures is $700,000.00 to be incurred by Defendant as a result of this Action and pursuant to the terms of the Settlement reached by the Parties. *Id*. § 7.3. The cost of these remedial measures are being paid by Defendant separate and apart from the Settlement Fund.

### C. Class Notice and Settlement Administration

Notice will be paid for by Defendant out of the Settlement Fund. Notice will be given to the Settlement Class via individual direct notice, which will be given by emailing or mailing short-form notices to the addresses associated with the Class Members. *Id*. § 8. A Long Form Notice will also be posted on the Settlement Website, along with other important documents such as the Settlement Agreement and the motions for final approval and for attorneys' fees and expenses. *Id*. § 8.3. The notice documents are clear and concise and directly apprise Class Members of all the information they need to know to make a claim, opt-out, or object to the Settlement. *See* Fed. R. Civ. P. 23(c)(2)(B).

### D. Attorneys' Fees and Expenses

The Parties have agreed that, as part of the Settlement, proposed Class Counsel will seek an award of reasonable attorneys' fees and reimbursement of litigation expenses to be paid by Defendant from the Settlement Fund. As explained in the Notices, the attorneys' fees to be requested by proposed Class Counsel will not exceed $419,375 (27.5% of the Settlement Consideration) and the request for reimbursement of litigation expenses will not exceed $35,000. Notably, the discussion of attorneys' fees and costs

did not take place until after the Parties agreed to all material settlement terms. *See* Declaration in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement attached hereto as Exhibit 2 ("Counsel Decl.") ¶ 14. Class Counsel's fee request is well within the range of reasonableness for Settlements of this nature and size. *See In re Mego Fin. Corp. Sec. Litig*., 213 F.3d 454, 463 (9th Cir. 2000) (affirming award of one-third of total recovery). Plaintiffs and Class Counsel will submit a fulsome motion supporting the fee request prior to the Final Approval Hearing.

### E.  Service Awards to Named Plaintiffs

In recognition of Plaintiffs' time and effort expended in pursuing the litigation and in fulfilling their obligations and responsibilities as representatives of the Class, proposed Class Counsel will ask the Court to approve a Service Award of up to $1,500.00 for each Plaintiff, payable from the Settlement Fund. S.A., § 15.1; *see also* Counsel Decl. ¶ 17.

The amount requested here is presumptively reasonable and is less than amounts commonly awarded in settled class action cases. *See, e.g., Pauley v. CF Ent.*, No. 2:13-CV-08011-RGK-CW, 2020 WL 5809953, at *4 (C.D. Cal. July 23, 2020) (This Court granted "class representative enhancement fees in the amount of $5,000 each to Plaintiffs," finding that amount to be "presumptively reasonable.

### V.   LEGAL AUTHORITY

Plaintiffs bring this motion pursuant to Federal Rule Civil Procedure 23(e), under which court approval is required to finalize a class action settlement. Courts, including those in this Circuit, endorse a three-step procedure for approval of class action settlements: (1) preliminary approval of the proposed settlement, followed by (2) dissemination of court-approved notice to the class, and (3) a final fairness hearing at which class members may be heard regarding the settlement and at which evidence may be heard regarding the fairness, adequacy, and reasonableness of the settlement. *Manual for Complex Litigation (Fourth)* (2004) § 21.63.

Plaintiffs request the Court take the first step and grant preliminary approval of the proposed Settlement Agreement.

## VI.  ARGUMENT

Federal courts strongly favor and encourage settlements, particularly in class actions and other complex matters where the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain. *See Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992) (noting the "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned"); 4 Newberg on Class Actions § 11.41 (4th ed. 2002) (citing cases). The Manual for Complex Litigation (Fourth) advises that in cases presented for both preliminary approval and class certification, the "judge should make a preliminary determination that the proposed class satisfies the criteria." *Id.* § 21.632.

### A.  The Settlement Satisfies Rule 23(a)

Before assessing the parties' settlement, the Court should first confirm the underlying settlement class meets the requirements of Rule 23(a). *See Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 620 (1997); Manual for Complex Litigation (Fourth), § 21.632. The requirements are:  numerosity, commonality, typicality, and adequacy—each of which is met here. Fed. R. Civ. P. 23(a); *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 979–80 (9th Cir. 2011).

#### 1.  The proposed Class is Sufficiently Numerous

While there is no fixed point where the numerosity requirement is met, Courts find numerosity where there are so many class members as to make joinder impracticable. *See* Fed. R. Civ. P. 23(a)(1). "Where the exact size of the class is unknown but general knowledge and common sense indicate that it is large, the numerosity requirement is satisfied." *Orantes-Hernandez v. Smith*, 541 F. Supp. 351, 370 (C.D. Cal. 1982). Generally, Courts will find numerosity is satisfied where a class includes at least 40 members. *Holly v. Alta Newport Hospital*, No.2:19-cv-07496, 2020 WL 1853308, at *7 (April 10, 2020). Numbering approximately 189,319 individuals, the proposed settlement class easily satisfies Rule 23's numerosity requirement. Joinder of the individuals is clearly impracticable—thus the numerosity prong is satisfied.

### 2. The Settlement Class Satisfies Commonality

The Settlement Class also satisfies the commonality requirement, which requires that class members' claims "depend upon a common contention." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Here, as in most data breach cases, "[t]hese common issues all center on [Defendant's] conduct, satisfying the commonality requirement." *In re the Home Depot, Inc., Customer Data Sec. Breach Litig.*, No. 1:14-MD-02583-TWT, 2016 WL 6902351, at *2 (N.D. Ga. Aug. 23, 2016). Indeed, common questions include, *inter alia*, whether Class Members' Private Information was compromised in the Data Incident; whether Carvin owed a duty to Plaintiffs and Class Members to protect their Private Information; whether Carvin breached its duties; and whether Carvin violated the common law and statutory violations. Thus, the commonality requirement is met.

### 3. Plaintiffs' Claims Are Typical to Those of the Class

Plaintiffs satisfy the typicality requirement of Rule 23 because their claims, which are based on Defendant's alleged failure to protect the Private Information of Plaintiffs and all members of the Class, are "reasonably coextensive with those of the absent class members." *See* Fed. R. Civ. P. 23(a)(3); *Meyer v Portfolio Recovery Associates*, 707 F.3d 943, 1041-42 (9th Cir. 2012) (upholding typicality finding). Plaintiffs allege their Private Information was compromised, and that they were therefore impacted by the same inadequate data security that harmed the rest of the Class. *See Just Film, Inc. v. Buono*, 847 F.3d 1108, 1118 (9th Cir. 2017) ("[I]t is sufficient for typicality if the plaintiff endured a course of conduct directed against the class."). Thus, typicality is met here.

### 4. Plaintiffs Will Adequately Protect the Interests of the Class

The adequacy requirement of Rule 23 is satisfied where (1) there are no antagonistic or conflicting interests between named plaintiffs and their counsel and the absent class members; and (2) the named plaintiffs and their counsel will vigorously prosecute the action on behalf of the class. Fed. R. Civ. P. 23(a)(4); *see also Ellis*, 657 F.3d at 985 (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998)).

Here, Plaintiffs are members of the Class who allegedly experienced the same injuries and seek, like other Class Members, compensation for Carvin's alleged data security shortcomings. Plaintiffs have no conflicts of interest with other Class Members, are subject to no unique defenses, and they and their counsel have and continue to vigorously prosecute this case on behalf of the Class.

Further, counsel for Plaintiffs have decades of combined experience as vigorous class action litigators and are well suited to advocate on behalf of the Class. *See* Counsel Decl. ¶ 15. Thus, Plaintiffs satisfy the requirement of adequacy.

**B. The Requirements of Rule 23(b)(3) Are Met for Purposes of Settlement**.

Plaintiffs allege that the Settlement Class is maintainable for purposes of settlement under Rule 23(b)(3), as common questions predominate over questions affecting only individuals members and class resolution is superior to other available methods for a fair and efficient resolution. *Id*.

The predominance requirement "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. As discussed above, common questions predominate over any questions affecting only individual members. Plaintiffs' claims depend on whether Carvin used reasonable data security to protect their Private Information. That question can be resolved, for purposes of settlement, using the same evidence for all Class Members, and thus is precisely the type of predominant question that makes a class-wide settlement worthwhile. *See Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) ("When 'one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3)'") (citation omitted).

Further, class-wide resolution is the only practical method of addressing the alleged violations at issue in this case. There are tens of thousands of Class Members with modest individual claims, most of whom likely lack the resources necessary to seek individual legal redress. *See Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) ("Where recovery on an individual basis would be dwarfed by the

cost of litigating on an individual basis, this factor weighs in favor of class certification.").

Because the claims are being certified for purposes of settlement, there are no issues with

manageability, and resolution of thousands of claims in one action is far superior to

individual lawsuits and promotes consistency and efficiency of adjudication. *See Malta*

*v. Fed. Home Loan Mortg. Corp.*, No. 10-CV-1290 BEN NLS, 2013 WL 444619, at *3

(S.D. Cal. Feb. 5, 2013) (predominance met where "considerations of judicial economy

favor litigating a predominant common issue once in a class action instead of many times

in separate lawsuits" and the "small individual claims of class members" made it

"unlikely that individual actions will be filed").

Certification of the Settlement Class for purposes of settlement is appropriate.

C.  **The Settlement Should Be Preliminarily Approved Pursuant to Rule 23(e).**

"[U]nder Rule 23(e)(1), the issue at preliminary approval turns on whether the

Court 'will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify

the class for purposes of judgment on the proposal.'" *Reyes v. Experian Info. Sols., Inc.*,

No. SACV1600563AGAFMX, 2020 WL 466638, at *1 (C.D. Cal. Jan. 27, 2020). If the

parties make a sufficient showing that the Court will likely be able to "approve the

proposal" and "certify the class for purposes of judgment on the proposal," "[t]he court

must direct notice in a reasonable manner to all class members who would be bound by

the proposal." Fed. R. Civ. P. 23(e).

"In evaluating a proposed settlement at the preliminary approval stage, . . . the

relevant inquiry is whether the settlement 'falls within the range of possible approval' or

'within the range of reasonableness.'" *Bykov v. DC Trans. Services, Inc.*, No. 2:18-cv-

1692, 2019 WL 1430984, at *2 (E.D. Cal. Mar. 29, 2019). The Ninth Circuit has identified

nine factors to consider in analyzing the fairness, reasonableness, and adequacy of a class

settlement: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and

likely duration of further litigation; (3) the risk of maintaining class action status

throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery

completed and the stage of the proceedings; (6) the views of counsel; (7) the presence of

a governmental participant; (8) the reaction of the class members to the proposed settlement and; (9) whether the settlement is a product of collusion among the parties. *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011); *see also Hanlon,* 150 F.3d at 1026. Rule 23(e) requires a court to consider additional factors, including that the class representative and class counsel have adequately represented the class, and that the settlement treats class members equitably. Fed. R. Civ. P. 23(e).

In applying these factors, this Court should be guided foremost by the principle that settlements of class actions are highly favored by federal courts. *Franklin v. Kaypro Corp.*, 884 F.2d 1222, 1229 (9th Cir. 1989).

Here, the relevant factors support the conclusion that the Settlement is fundamentally fair, reasonable, and adequate, and should be preliminarily approved.

### 1.  The Strength of Plaintiffs' Case

Plaintiffs believe their claims are viable and that they have a reasonably good chance of proving that Carvin's data security was inadequate and that, if they establish that central fact, Defendant is likely to be found liable under at least some of the liability theories and statutory and common law Plaintiffs pled in their Consolidated Class Action Complaint. While Plaintiffs believe they have strong claims and would be able to prevail, they also recognize that success is not guaranteed. It is "plainly reasonable for the parties at this stage to agree that the actual recovery realized and risks avoided here outweigh the opportunity to pursue potentially more favorable results through full adjudication." *Dennis v. Kellogg Co.*, No. 09-cv-1786-L(WMc), 2013 WL 6055326, at *3 (S.D. Cal. Nov. 14, 2013). "Here, as with most class actions, there was risk to both sides in continuing towards trial. The settlement avoids uncertainty for all parties involved." *Chester v. TJX Cos.*, No. 5:15-cv-01437-ODW(DTB), 2017 WL 6205788, at *6 (C.D. Cal. Dec. 5, 2017). Given the heavy obstacles and inherent risks Plaintiffs face with respect to the novel claims brought in data breach class actions, including class certification, summary judgment, and trial, the substantial benefits the Settlement provides favors preliminary approval of the Settlement.

### 2. The Risk, Expense, Complexity, and Likely Duration of Further Litigation

While Plaintiffs believe their case is a strong one, all cases, including this one, are subject to substantial risk. This case involves a proposed class of approximately 189,319 individuals (each of whom, Carvin would argue, needs to establish cognizable harm and causation); a complicated and technical factual background; and a motivated Defendant that has already provided at least some relief to the potentially affected individuals in the form of free credit monitoring.

Historically, data breach cases face substantial hurdles in surviving even the pleading stage. *See, e.g., Hammond v. The Bank of N.Y. Mellon Corp.*, No. 08 Civ. 6060 (RMB) (RLE), 2010 U.S. Dist. LEXIS 71996, at *2-4 (S.D.N.Y. June 25, 2010) (collecting cases). Even cases of similar wide-spread notoriety and implicating data similar to the data at issue here have been found wanting at the district court level. *In re U.S. Office of Pers. Mgmt. Data Sec. Breach Litig.*, 266 F. Supp. 3d 1, 19 (D.D.C. 2017) ("The Court is not persuaded that the factual allegations in the complaints are sufficient to establish . . . standing."), *reversed in part*, 928 F.3d 42 (D.C. Cir. June 21, 2019) (holding that plaintiff had standing to bring a data breach lawsuit).

To the extent the law has gradually accepted this relatively new type of litigation over time, the path to a class-wide monetary judgment remains unforged, particularly in the area of damages. For now, data breach cases are among the riskiest and most uncertain of all class action litigation, making settlement the more prudent course when a reasonable one can be reached. The damages methodologies, while theoretically sound in Plaintiffs' view, remain largely untested in a disputed class certification setting and unproven in front of a jury. And as in any data breach case, establishing causation on a class-wide basis is rife with uncertainty.

Here, there was a very real risk that there would be little or no recovery for the Class were the litigation to proceed. The Settlement secured all money remaining in Defendant's wasting insurance policy, and Defendant advised that it would likely declare

bankruptcy were the insurance policy fully depleted by continued litigation. Counsel Decl., ¶¶ 5, 9. Thus, a timely Settlement was crucial to obtaining a recovery for the Class.

Each risk, by itself, could impede the successful prosecution of these claims at trial and in an eventual appeal, which would result in no recovery to the class. "Regardless of the risk, litigation is always expensive, and both sides would bear those costs if the litigation continued." *Paz v. AG Adriano Goldschmeid, Inc*., No. 14CV1372DMS(DHB), 2016 WL 4427439, at *5 (S.D. Cal. Feb. 29, 2016). Thus, this factor favors approval.

### 3.  The Risk of Maintaining Class Action Status Through Trial

Plaintiffs acknowledge that if they were to proceed to litigate their claims through trial, Plaintiffs would encounter risks in obtaining and maintaining certification of the class. The class has not been certified, and Defendant will certainly oppose certification if the case proceeds. Thus, Plaintiffs "necessarily risk losing class action status." *Grimm v. American Eagle Airlines, Inc.*, No. LA CV 11-00406 JAK(MANx), 2014 WL 1274376, at *10 (C.D. Cal. Sept. 24, 2014). Class certification in contested consumer data breach cases is not common—first occurring in *Smith v. Triad of Ala.*, LLC, No. 1:14-CV-324-WKW, 2017 U.S. Dist. LEXIS 38574, at *45-46 (M.D. Ala. Mar. 17, 2017), and most recently in *In re Brinker Data Incident Litig.*, No. 3:18-CV-686-TJC-MCR, 2021 WL 1405508, at *1 (M.D. Fla. Apr. 14, 2021), where a class was certified over objection to plaintiffs' damage calculation. Thus, the dearth of direct precedent adds to the risks posed by continued litigation and this factor favors approval.

### 4.  The Amount Offered in Settlement

In light of the substantial risks and uncertainties presented by data breach litigation generally and this litigation specifically, the value of the Settlement strongly favors approval. The Settlement makes significant relief available to Settlement Class Members in the form of identity theft and credit monitoring services, out-of-pocket expense reimbursements, compensation for lost time, cash payments, and business practice enhancements implemented by Defendant. S.A. §§ 3, 7.

The per Class Member amounts of the combined value of the Settlement are substantial, with the per-Class-Member value of the Settlement being $8.06. This is a strong result for the Class and is on par with or exceeds that of other exemplary data breach settlements.[1] These comparisons are not intended to disparage the settlements achieved in those cases, but to underscore that Plaintiffs have achieved an excellent resolution for the Settlement Class.

Because the settlement amount here is similar to, or exceeds, other settlements reached and approved in similar cases, this factor reflects that the settlement is fair. *See Calderon v. Wolf Firm*, No. SACV 16-1622-JLS(KESx), 2018 WL 6843723, at *7-8 (C.D. Cal. Mar. 13, 2018) (comparing class settlement with other settlements in similar cases). In light of the difficulties and expenses Class Members would face pursuing individual claims, as well as the risk that some Class Members may be unaware of their claims, this settlement is appropriate. *See id*. Accordingly, this factor favors approval.

---

[1] *See, e.g., Fehlen v. Accellion, Inc.*, Case No. 21-cv-01353 (N.D. Cal.) (settlement of $8.1 million for 9.2 million class members who had their Social Security Numbers compromised; $0.90 per class member); *Dickey's Barbeque Restaurants, Inc.*, Case No. 20-cv-3424 (N.D. Tex.), Dkt. 62 (data breach class action involving more than 3 million people that settled for $2.3 million, or $0.76 per person); *In re: Capital One Consumer Data Breach Litigation*, MDL No. 1:19md2915 (AJT/JFA) Doc. 2251 (Memo in Support of Final Approval), page 1 ($190 million common fund settlement for a class of approximately 98 million, or $1.93 per person); *Cochran v. Accellion, Inc., et al*., No. 5:21-cv-01887 (N.D. Cal.), ECF No. 32 (June 30, 2021) ($5 million settlement fund for 3.82 million class members or approximately $1.31 per member); *Adlouni v. UCLA Health Systems Auxiliary, et al*., No. BC 589243 (Cal. Super. Ct. June 28, 2019) ($2 million settlement in medical information data breach for approximately 4,500,000 class members; 44 cents per member); *In re Anthem, Inc. Data Breach Litig*., No. 5:15-md-02617 (N.D. Cal. Aug. 15, 2018) ($115 million settlement in medical information data breach for 79,200,000 class members; $1.45 per member); *In re The Home Depot, Inc. Customer Data Sec. Breach Litig.*, No. 1:14-MD02583, 2016 WL 6902351, at *7 (N.D. Ga. Aug. 23, 2016) and ECF No. 181-2 ¶¶ 22, 38 ($13 million settlement for approximately 40 million class members; 32.5 cents per class member); *In re Target Corp. Customer Data Sec. Breach Litig*., MDL No. 14-2522, 2017 WL 2178306, at **1- 2 (D. Minn. May 17, 2017) ($10 million settlement for nearly 100 million class members; 10 cents per member); *In re LinkedIn User Priv. Litig*., 309 F.R.D. 573, 582 (N.D. Cal. 2015) ($1.25 million settlement for approximately 6.4 million class members; 20 cents per member).

### 5. The Extent of Discovery Completed and the Stage of Proceedings

Before entering into settlement discussions on behalf of class members, counsel should have "sufficient information to make an informed decision." *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998). Here, Plaintiffs vigorously and aggressively gathered information regarding the Data Incident—including publicly-available documents concerning announcements of the Data Incident and notice of the Data Incident to Class Members. Counsel Decl. ¶ 17. The parties also informally exchanged non-public information concerning the Data Incident, its scope, and remedial measures being undertaken by Carvin. *Id*. ¶¶ 7–8. In preparation for mediation, and Class Counsel reviewed all documents produced by Defendant, as well as its responses to Plaintiffs' requests for information. Here, the litigation proceeded to the point where "the parties have sufficient information to make an informed decision about settlement," including a realistic assessment of the strengths and weakness of their respective cases. *See Linney*, 151 F.3d at 1239.

### 6. The Experience and Views of Counsel

Class Counsel has substantial experience litigating complex class cases of various types, including data breach cases such as this one. *See* Counsel Decl., ¶ 15, Exhibits A–C (firm resumes) thereto. Class Counsel's collective experience in similar types of privacy and data protection cases provided substantive knowledge on the subject to enable Class Counsel to represent Plaintiffs' and Class Members' interests. Having worked on behalf of the putative Class since the Data Incident was first announced, evaluated the legal and factual disputes, and dedicated significant time and monetary resources to this litigation, proposed Class Counsel fully endorse the Settlement achieved. *Id*. ¶ 18. A great deal of weight is to be accorded to the recommendation of experienced counsel, who are most closely acquainted with the facts of the underlying litigation. *See, e.g., Norton v. Maximus, Inc*., No. CV 1:14-0030 WBS, 2017 WL 1424636, at *6 (D. Idaho Apr. 17, 2017); *Nat'l Rural Telecomm. Coop. v. DirecTV, Inc*., 221 F.R.D. 523, 528 (C.D. Cal. 2004). Thus, this factor supports approval.

### 7. Governmental Participants.

There is no governmental participant in this matter. This factor is neutral.

### 8. The Reaction of the Class Members to the Proposed Settlement

Because notice has not yet been given, this factor is not yet implicated.

### 9. Lack of Collusion Among the Parties

Through the assistance of a neutral mediator and a full-day mediation, the parties negotiated a substantial, multifaceted Settlement, as described above. Counsel Decl. ¶¶ 5–6. Class Counsel and Carvin's counsel are well-versed in handling data breach class actions such as this one and fully understand the values recovered in similar cases. The assistance of a respected third-party mediator here is also evidence of a lack of collusion. *Ogbuehi v. Comcast of Cal./Colo./Fla./Or., Inc*., 303 F.R.D. 337, 350 (E.D. Cal. 2014). Therefore, the Court can be assured that the negotiations were not collusive.

### 10. The Settlement Treats Settlement Class Members Equitably

Finally, Rule 23(e)(2)(D) requires that this Court confirm that the settlement treats all class members as equitably as possible under the circumstances. In considering whether this factor weighs in favor of approval, a Court must determine whether the Settlement "improperly grant[s] preferential treatment to class representatives or segments of the class." *Hudson v. Libre Technology Inc.,* No. 3:18-cv-1371-GPC-KSC, 2020 WL 2467060, *9 (S.D. Cal. May 13, 2020) (citations omitted).

Here, the Settlement treats all Class Members equitably. Each and every Class Member has the opportunity to make the same claims for benefits under the Settlement. S.A. § 3. While Plaintiffs may seek approval of service awards from this Court, as will be further explained in Plaintiffs' eventual motion for attorneys' fees and plaintiffs' service awards, the contemplated awards are in line with those granted in similar cases, is presumptively reasonable, and does not call into question Plaintiffs' adequacy or the validity of the Settlement. As such, this factor also weighs in favor of approval.

## VII.   THE COURT SHOULD APPROVE THE PROPOSED NOTICE PROGRAM

Rule 23 requires that before final approval, the "court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B). For classes certified under Rule 23(b)(3), "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). "The notice may be by one or more of the following:  United States mail, electronic means, or other appropriate means." *Id*.

Such notice must be the "best notice practicable," *see* Fed. R. Civ. P. 23(c)(2)(B), which means "individual notice to all members who can be identified through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). To satisfy due process, notice to class members must be the best practicable, and reasonably calculated under all the circumstances to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985). Class settlement notices must present information about a proposed settlement simply, neutrally, and understandably. *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 567 (9th Cir. 2019). Notice is adequate if it generally describes the terms of the class action settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard. *Id.*

Here, and following a competitive bidding process, the parties have agreed to a robust notice program to be administered by a well-respected third-party class administrator—Simpluris—which will use all reasonable efforts to provide direct and individual notice to each potential Settlement Class Member via email and direct U.S. mail. Counsel Decl. ¶¶ 10–13. The costs of administering the Settlement will be paid by Carvin out of the Settlement Fund. S.A. § 1.47. The Notices and Claim Form negotiated by the Parties are clear and concise and inform Settlement Class Members of their rights and options under the Settlement, including detailed instructions on how to make a claim,

object to the Settlement, or opt-out of the Settlement. Counsel Decl. ¶ 13; *see also* S.A. Exhibits A–D.

In addition to the direct notice, the Settlement Administrator will also establish a dedicated Settlement Website and will maintain and update the website throughout the Claims Period, with the forms of Postcard and Email Notice, Long Notice, and Claim Forms approved by the Court, as well as the Settlement Agreement. Counsel Decl. ¶ 10. The Settlement Administrator will also make available a toll-free help line to provide Settlement Class Members with additional information about the settlement. *Id*. The Settlement Administrator is also authorized to provide copies of the forms of Postcard and Email Notice, Long Notice, and Claim Forms approved by the Court, as well as the Settlement Agreement, upon request.

Plaintiffs have negotiated a notice program that is reasonably calculated under all the circumstances to apprise Class Members of the pendency of the action and afford them an opportunity to present their objections. Class Members here provided Defendant their contact information through their current or former employers – clients of Defendant – thus direct notice via email and, where email addresses are not available, via U.S. mail, is the best practicable. *Compare Roes 1-2 v. SFBSC Management LLC*, 944 F.3d 1035, 1046 (9th Cir. 2019). Notice programs providing notice by email and mail have been approved by the Ninth Circuit. *See, e.g., In re Online DVD-Rental Antitrust Litigation*, 779 F. 3d 934, 946 (9th Cir. 2015) (finding notice provided initially by email, and then by mail to individuals whose emails bounced back satisfies Rule 23).

Because the notice plan ensures that Settlement Class Members' due process rights are amply protected, this Court should approve it. *See Hartranft v. TVI, Inc*., No. 15-01081-CJC-DFM, 2019 WL 1746137, at *3 (C.D. Cal. Apr. 18, 2019) ("The Court finds that the Class Notice and the manner of its dissemination described in Paragraph 7 above and Section VIII of the Agreement constitutes the best practicable notice under the circumstances and is reasonably calculated, under all the circumstances, to apprise Settlement Class Members of the pendency of this action, the terms of the Agreement,

and their right to object to or exclude themselves from the Settlement Class."); *see also Spencer v. #1 A LifeSafer of Ariz., LLC*, No. CV-18-02225, 2019 WL 1034451, at *3 (D. Ariz. Mar. 4, 2019) (Bade, J.) (preliminarily approving settlement, finding "the proposed notice program is clearly designed to advise the Class Members of their rights.").

### A. Appointment of the Settlement Administrator

In connection with implementation of the Notice Program and administration of the settlement benefits, the Parties request that the Court appoint Simpluris to serve as the Settlement Administrator. Simpluris has a trusted and proven track record of supporting thousands of class action administrations. Counsel Decl. ¶ 10.

### B. Appointment of Settlement Class Counsel

Under Rule 23, "a court that certifies a class must appoint class counsel [who must] fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). In making this determination, courts generally consider the following attributes: the proposed class counsel's (1) work in identifying or investigating potential claims, (2) experience in handling class actions or other complex litigation, and the types of claims asserted in the case, (3) knowledge of the applicable law, and (4) resources committed to representing the class. Fed. R. Civ. P. 23(g)(1)(A)(i–iv).

Here, proposed Class Counsel has extensive experience prosecuting class actions and other complex cases, and specifically data breach cases. *See* Counsel Decl. ¶ 15, Exs. A, B, and C. Accordingly, the Court should appoint William B. Federman of Federman & Sherwood, A. Brooke Murphy of Murphy Law, and Mason A. Barney of Siri & Glimstad LLP as Class Counsel.

## VIII.   CONCLUSION

Plaintiffs have negotiated a fair, adequate, and reasonable Settlement that will provide Class Members with both significant monetary and equitable relief. The Settlement is likely to be approved, and as such, Notice should be ordered to issue to the class. For all the above reasons, Plaintiffs respectfully request this Court grant Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement.

Date: April 17, 2024

Respectfully Submitted,

By: *s/ William B. Federman*
William B. Federman*
FEDERMAN & SHERWOOD
10205 N. Pennsylvania Ave.
Oklahoma City, OK 73120
T: (405) 235-1560
E: wbf@federmanlaw.com

A. Brooke Murphy*
MURPHY LAW FIRM
4116 Will Rogers Pkwy, Suite 700
Oklahoma City, OK 73108
T: (405) 389-4989
E: abm@murphylegalfirm.com

Mason A. Barney*
SIRI & GLIMSTAD LLP
745 Fifth Avenue, Suite 500
New York, New York 10151
T: (212) 532-1091
E: mbarney@sirillp.com

*Interim Co-Lead Class Counsel*

***Admitted pro hac vice**

## CERTIFICATE OF SERIVCE

I hereby certify that on April 17, 2024, I electronically filed the foregoing document using the Court's electronic filing system, which will notify all counsel of record authorized to receive such filings.

*/s/William B. Federman*