William B. Federman
(admitted *pro hac vice*)
**FEDERMAN & SHERWOOD**
10205 North Pennsylvania Avenue
Oklahoma City, Oklahoma 73120
Telephone: (405) 235-1560
Facsimile: (405) 239-2112
wbf@federmanlaw.com

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Amanda Perez, et al., | No. CV-23-00792-PHX-SMM |
| Plaintiffs, | |
| v. | **PLAINTIFFS' UNOPPOSED MOTION FOR ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS AND MEMORANDUM IN SUPPORT** |
| Carvin Wilson Software LLC, | |
| Defendant. | |

# TABLE OF CONTENTS

I.     INTRODUCTION .................................................................................................. 1

II.    FACTS AND PROCEDURAL HISTORY ............................................................ 2

III.   ARGUMENT ....................................................................................................... 2

   A.  The Requested Fee is Reasonable Under the Percentage-of-Fund Method ............ 3

   B.  Class Counsel's Efforts Justify the Requested Fee Amount .................................... 4

   C.  The *Vizcaino* Factors Support the Award Requested. ............................................ 7

      1.  Class Counsel achieved a favorable result for the Class. .................................. 7

      2.  The litigation was risky, complex, and expensive. ............................................ 8

      3.  Plaintiffs' Counsel performed superior quality work to achieve the Settlement. ...................................................................................................... 10

      4.  Class Counsel worked on a contingent basis. .................................................. 11

      5.  Fees awarded in comparable cases exceed those requested here. .................... 13

      6.  The reaction of the Settlement Class supports the fee. .................................... 14

   D.  A Lodestar Cross-Check Confirms the Reasonableness of the Fee. ...................... 14

   E.  The litigation expenses should be reimbursed. ..................................................... 15

   F.  The Court should grant Service Awards. ............................................................... 16

IV.    CONCLUSION .................................................................................................. 17

# TABLE OF AUTHORITIES

**Cases**

*Allagas v. BP Solar Int'l, Inc.*,
  No. 314CV00560, 2016 WL 9114162 (N.D. Cal. Dec. 22, 2016) ................................. 11

*Avila v. LifeLock Inc.*,
  No. 2:15-CV-01398, 2020 WL 4362394 (D. Ariz. July 27, 2020) ................................. 13

*Barbosa v. Cargill Meat Sols. Corp.*,
  297 F.R.D. 431 (E.D. Cal. 2013) ................................................................................... 13

*Bellinghausen v. Tractor Supply Co.*,
  306 F.R.D. 245 (N.D. Cal. 2015) .................................................................................. 12

*Blum v. Stenson*,
  465 U.S. 886, 900 n.16 (1984) ........................................................................................ 3

*Boyd v. Bank of Am. Corp.*,
  No. SACV 13–0561, 2014 WL 6473804 (C.D. Cal. Nov. 18, 2014) ............................ 13

*Brown v. 22nd Dist. Agric. Ass'n*,
  No. 15-CV-02578-DHB, 2017 WL 3131557 (S.D. Cal. July 24, 2017) ....................... 12

*Burden v. Select Quote Ins. Servs.*,
  No. C 10-5966, 2013 WL 3988771 (N.D. Cal. Aug. 2, 2013) ....................................... 13

*Cf. Kirchoff v. Flynn*,
  786 F.2d 320 (7th Cir. 1986) ........................................................................................... 3

*Ching v. Siemens Indus.*,
  No. 11-CV-04838-MEJ, 2014 WL 2926210 (N.D. Cal. June 27, 2014) ....................... 12

*Cox v. Clarus Mktg. Grp., LLC*,
  291 F.R.D. 473 (S.D. Cal. 2013) ..................................................................................... 5

*Craft v. Cnty. of San Bernardino*,
  624 F. Supp. 2d 1113 (C.D. Cal. 2008) ........................................................................... 4

*Dearaujo v. Regis Corp.*,
  No. 2:14-cv-01408, 2017 WL 3116626 (E.D. Cal. July 21, 2017) ............................... 13

*Fernandez v. Victoria's Secret Stores, LLC*,
  No. CV 06-04149, 2008 WL 8150856 (C.D. Cal. July 21, 2008) ................................. 14

*Franco v. Ruiz Food Prods., Inc.*,
   No. 1:10-cv-02354, 2012 WL 5941801 (E.D. Cal. Nov. 27, 2012) .............................. 13

*Garner v. State Farm Mut. Auto. Ins. Co.*,
    No. CV 08 1365 CW EMC, 2010 WL 1687832 (N.D. Cal. Apr. 22, 2010) ................. 14

*Graham v. Capital One Bank (USA), N.A.*,
    No. SACV 13-00743-JLS, 2014 WL 12579806 (C.D. Cal. Dec. 8, 2014) .................... 7

*Hammond v. The Bank of N.Y. Mellon Corp.*,
    No. 08 Civ. 6060(RMB)(RLE), 15 2010 WL 2643307 (S.D.N.Y. June 25, 2010) .......... 9

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) ....................................................... 10

*Hawthorne v. Umpqua Bank*,
    No. 11-6700, 2015 WL 1927342 (N.D. Cal. Apr. 28, 2015) ........................... 17

*Hefler v. Wells Fargo & Co.*,
    2018 WL 6619983 (N.D. Cal. Dec. 18, 2018) ...................................... 3

*In re Am. Apparel, Inc. S'holder Litig.*,
    No. CV1006352MMMJCGX, 2014 WL 10212865 (C.D. Cal. July 28, 2014) ............ 11

*In re Anthem, Inc. Data Breach Litig.*,
    No. 15-MD-02617-LHK, 2018 WL 3960068 (N.D. Cal. Aug. 17, 2018) ................. 6, 9

*In re Bluetooth. Headset Prod. Liab. Litig.*,
    654 F.3d 942 (9th Cir. 2011) ....................................................... 3

*In re Capacitors Antitrust Litig.*,
    No. 14-cv-03264, 2018 WL 4790575 (N.D. Cal. Sept. 21, 2018) .................... 16

*In re Equifax Inc. Customer Data Sec. Breach Litig.*,
    No. 1:17-MD-2800, 2020 WL 256132 (N.D. Ga. Mar. 17, 2020) ..................... 8, 9

*In re Heritage Bond Litig.*,
    No. 02-ML-1475, 2005 WL 1594389 (C.D. Cal. June 10, 2005) .................. 7, 10, 14

*In re Lenovo Adware Litig.*,
    No. 15-md-0624, 2019 WL 1791420 (N.D. Cal. April 24, 2019) .................... 16

*In re Mego Fin. Corp. Sec. Litig.*,
    213 F.3d 454 (9th Cir. 2000) ................................................... 13, 17

*In re Omnivision Techs., Inc.*,
    559 F. Supp. 2d. 1046 (N.D. Cal. 2008) .......................................... 3, 7

*In re Online DVD Rental Antitrust Litig.*,
    779 F.3d 934 (9th Cir. 2015) ..................................................... 17

iii

*In re Pac. Enters. Secs. Litig.*,
   47 F.3d 373, 379 (9th Cir. 1995) .................................................................. 13

*In re Toyota Unintended Acceleration Mktg., Sales Practices, & Prods. Liab. Litig.*,
   No. 8:10-ML-2151, 2013 WL 12327929 (C.D. Cal. July 24, 2012) ........................... 10

*In re Toys R Us-Delaware, Inc.--Fair & Accurate Credit Transactions Act (FACTA) Litig.*,
   295 F.R.D. 438 (C.D. Cal. 2014) .................................................................. 14

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*,
   19 F.3d 1291 (9th Cir. 1994) ................................................................. 11, 12

*In re Wawa, Inc. Data Sec. Litig.*,
   2022 WL 1173179 (E.D. Pa. Apr. 20, 2022) ...................................................... 5

*In re Yahoo! Inc. Customer Data Breach Litig.*,
   No. 16-MD-02752, 2020 WL 4212811 (N.D. Cal. July 22, 2020) ........................... 6, 16

*In re: Solara Medical Supplies Data Breach Litig.*,
   No. 3:19-cv-02284 (S.D. Cal., Sept. 12, 2023) ................................................... 5

*Jordan v. Freedom Nat'l Ins. Servs. Inc.*,
   No. CV-16-00362, 2017 WL 10185526 (D. Ariz. July 20, 2017) ............................... 13

*Kissel v. Code 42 Software Inc.*,
   No. 8:15-cv-01936, 2018 WL 6113078 (C.D. Cal. Feb. 20, 2018) .................... 7, 12, 16

*Knight v. Red Door Salons, Inc.*,
   No. 08–01520 SC, 2009 WL 248367 (N.D. Cal. Feb. 2, 2009) ................................. 10

*Laffitte v. Robert Half Int'l, Inc.*,
   1 Cal. 5th 480, 490, 376 P.3d 672 (2016) ......................................................... 3

*Lee v. JPMorgan Chase & Co.*,
   No. 13-cv-511, 2015 WL 12711659 (C.D. Cal. Apr. 28, 2015) ................................. 13

*Linney v. Cellular Alaska P'ship*,
   No. C-96-3008, 1997 WL 450064 (N.D. Cal. July 18, 1997),
   aff'd, 151 F.3d 1234 (9th Cir. 1998) ........................................................... 8, 9

*Loring v. City of Scottsdale*,
   721 F.2d 274 (9th Cir. 1983) ...................................................................... 5

*Lozano v. AT&T Wireless Servs.*, Inc.,
   No. 2:02-CV-00090-CAS (AJWx), 2010 WL 11520704 (C.D. Cal. Nov. 22, 2010) .... 11

*Mejia v. Walgreen Co.*,
   No. 2:19-CV-00218 WBS AC, 2021 WL 1122390 (E.D. Cal. Mar. 24, 2021) .............. 15

*Mills v. Elec. Auto-Lite Co.*,
   396 U.S. 375 (1970) ........................................................................... 5

*Nwabueze v. AT&T Inc.*,
   No. C 09- 01529, 2014 WL 324262 (N.D. Cal. Jan. 29, 2014) .................. 3

*Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*,
   688 F.2d 615 (9th Cir. 1982) ............................................................. 10

*Pappas v. Naked Juice Co of Glendora, Inc.*,
   2014 WL 12382279 (C.D. Cal. Jan. 2, 2014) ......................................... 5

*Pokorny v. Quixtar, Inc.*,
   2013 WL 3790896 (N.D. Cal. July 18, 2013) ......................................... 6

*Rodriguez v. W. Publ'g Corp.*,
   563 F.3d 948 (9th Cir. 2009) ............................................................. 17

*Romero v. Producers Dairy Foods, Inc.*,
   No. 1:05-cv-0484, 2007 WL 3492841 (E.D. Cal. Nov. 14, 2007) ............. 13

*Singer v. Becton Dickinson Co.*,
   No. 08-CV-821, 2010 WL 2196104 (S.D. Cal. June 1, 2010) ................... 14

*Six (6) Mexican Workers v. Ariz. Citrus Growers*,
   904 F.2d 1301 (9th Cir. 1990) ............................................................. 4

*Smith v. Am. Greetings Corp.*,
   2016 WL 362395 (N.D. Cal. Jan. 29, 2016) ........................................... 6

*Smith v. CRST Van Expedited, Inc.*,
   No. 10-CV-1116-IEG, 2013 WL 163293 (S.D. Cal. 2013) ...................... 13

*Staton v. Boeing Co.*,
   327 F.3d 938 (9th Cir. 2003) ........................................................... 2, 8

*Stuart v. Radioshack Corp.*,
   No. C-07-4499, 2010 WL 3155645 (N.D. Cal. Aug. 9, 2010) .................. 14

*Syed v. M-I, LLC*,
   No. 1:12-cv-1718, 2017 WL 3190341 (E.D. Cal. July 27, 2017) ............. 13

*United States v. Armour & Co.*,
   402 U.S. 673 (1971) ......................................................................... 10

*Van Kraken v. Atl. Richfield Co.*,
   901 F. Supp. 294 (N.D. Cal. 1995) ....................................................... 4

*Vizcaino v. Microsoft Corp.*,
290 F.3d 1043 (9th Cir. 2002) ...................................................2-8, 10-12, 14-15

*Williams v. MGM-Pathe Comms. Co.*,
129 F.3d 1026 (9th Cir. 1997) ...................................................................... 13

*Willner v. Manpower Inc.*,
No. 11-cv-02846, 2015 WL 3863625 (N.D. Cal. June 22, 2015) .................. 16

*Wing v. Asarco Inc.*,
114 F.3d 986 (9th Cir. 1997) ........................................................................ 11

*Wren v. RGIS Inventory Specialists*,
2011 WL 1230826 (N.D. Cal. Apr. 1, 2011) ................................................... 6

*Wren v. RGIS Inventory Specialists*,
No. 06-cv-05778, 2011 WL 1230826 (N.D. Cal. Apr. 1, 2011).................... 14

*Zepeda v. PayPal, Inc.*,
No. C-10-2500, 2017 WL 1113293 (N.D. Cal. Mar. 24, 2017) .................... 10

## Rules

Federal Rules of Civil Procedure ........................................................................ 2

## Other Authorities

4 Newberg and Conte, Newberg On Class Actions
(4th ed. 2007) ............................................................................................... 13

American Law Institute, *Principles of the Law of Aggregate Litigation*
(2010) ............................................................................................................. 3

Federal Judicial Center, Manual for Complex Litigation,
(4th ed. 2022) ................................................................................................. 7

Lester Brickman, *ABA Regulation of Contingency Fees: Money Talks, Ethics Walks*,
65 Fordham L. Rev. 247 (1996) ................................................................... 14

Brian Fitzpatrick, *An Empirical Study of Class. Action Settlements and Their Fee Awards*,
7 J. Empirical Legal Stud. 811 (2010) ........................................................... 4

## I.    INTRODUCTION

Counsel for Plaintiffs Amanda Perez, Sasha Lipp, James Murray, Michael Halpren and Elijah Johnson (collectively, "Plaintiffs") negotiated a proposed settlement resolving the claims of individuals who had their names, Social Security numbers, and financial account information ("Private Information") compromised as a result of a data breach of Defendant Carvin Wilson Software, LLC ("Defendant" or "Carvin") computer systems (the "Data Security Incident"). The proposed Settlement provides $1,525,000 in substantial and immediate benefits (the "Settlement Consideration") to the Settlement Class.

Specifically, the Settlement provides a non-reversionary common fund of $825,000.00, S.A. ¶ 2.1, from which all Settlement Class Members are eligible to receive cash payments, including payments for lost time at a rate of $20 per hour up to four (4) hours, compensation for out-of-pocket losses up to $8,500 per Settlement Class Member, and additional *pro rata* cash payments. Doc. 37, Exhibit 1, Settlement Agreement, ("S.A.") ¶¶ 3.1-3.4. In addition to any monetary recovery, Defendant also agreed to provide Settlement Class Members with two years of credit monitoring and identity theft protection services. S.A. ¶ 3.1. Finally, Plaintiffs and Class Members received a benefit in the form of substantial business practice changes and remedial measures implemented by Carvin and aimed at preventing further unauthorized access to their sensitive Private Information entrusted to Carvin, totaling approximately $700,000.00, which is being paid by Carvin in addition to the Settlement Fund.

Plaintiffs and Class Counsel now seek service awards for the Plaintiffs, as well as an award of attorneys' fees and expenses to Plaintiffs' counsel. The Settlement provides that Defendant will pay a $1,500 service award to each Plaintiff as compensation for his or her time and efforts participating in the case. S.A. ¶ 15.1. The Settlement further provides that Defendant will pay Plaintiffs' counsel attorneys' fees, as approved by this Court, not to exceed $419,375.00 (27.5% of the Settlement Consideration) and the reimbursement of litigation expenses not to exceed $35,000.00. Class Counsel now requests a fee award of

$358,375, which represents 23.5% of the Settlement Consideration, and reimbursement of litigation expenses in the amount of $8,867.85. This fee and expense request is below the Ninth Circuit's benchmark and is supported by a lodestar cross-check. The Court granted preliminary approval of the Settlement, including Class Counsel's anticipated request for service awards and attorneys' fees and expenses, on May 30, 2024 (Doc. 47). Class Notice was subsequently issued, advising Settlement Class Members of the same. To date, no objections to the requests have been submitted.

## II.  FACTS AND PROCEDURAL HISTORY

Plaintiffs incorporate, by reference, the facts and procedural history set forth in their *Unopposed Motion for Preliminary Approval of Class Action Settlement and Memorandum in Support* filed on April 17, 2024 (Doc. 37) herein.

## III.  ARGUMENT

Federal Rule of Civil Procedure 23(h) permits the court to award reasonable attorney's fees and costs in class action settlements as authorized by law or by the parties' agreement. Fed. R. Civ. P. 23(h). In deciding whether the requested fee amount is appropriate, the Court's role is to determine whether such amount is '"fundamentally fair, adequate, and reasonable."' *Staton v. Boeing Co.*, 327 F.3d 938, 963 (9th Cir. 2003) (quoting Fed. R. Civ. P. 23(e)).

Where a class settlement results in the creation of common benefits, courts in this Circuit may use either—or both—the "percentage-of-the-recovery" or the "lodestar-multiplier" method to determine a reasonable fee. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002). However, "the primary basis of the fee award remains the percentage method" while "the lodestar may provide a useful perspective on the reasonableness of a given percentage award. *Id.* at 1050. Indeed, courts frequently use the percentage method as it 'is easy to calculate; it establishes reasonable expectations on the part of plaintiffs' attorneys as to their expected recovery; and it encourages early settlement,

2

which avoids protracted litigation.'" *Laffitte v. Robert Half Int'l, Inc.*, 1 Cal. 5th 480, 490, 376 P.3d 672, 677 (2016) (citation omitted); *see Nwabueze v. AT&T Inc.*, No. C 09- 01529, 2014 WL 324262, at *1 (N.D. Cal. Jan. 29, 2014) ("[W]here a settlement does not create a common fund from which to draw, a court may, in its discretion, analyze the case as a 'constructive common fund' for fee-setting.").

Here, under any measure, the requested fee is fair, reasonable, and adequate.

### A.   The Requested Fee is Reasonable Under the Percentage-of-Fund Method

The Supreme Court has long held that, in common fund settlement cases like this, class counsel is entitled to a reasonable fee based "on a percentage of the fund bestowed on the class." *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984). Thus, the Ninth Circuit has consistently approved awards of attorneys' fees using the percentage-of-recovery method. *See, e.g.*, *Vizcaino*, 290 F.3d at 1047-48. In recent years, this method has become the preferred one. *See In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2008) (recognizing the "use of the percentage method in common fund cases appears to be [the] dominant" method for determining attorneys' fees); American Law Institute, *Principles of the Law of Aggregate Litigation* §3.13(b) (2010) ("[A] percentage-of-the-fund approach should be the method utilized in most common-fund cases.").

The percentage-of-the-fund approach offers several advantages which militate in favor of its use as the principal method for determining the reasonableness of Class Counsel's fee request. First, it reduces the burden on this Court to undertake the painstaking process of applying the lodestar method. *See, e.g.*, *Hefler v. Wells Fargo & Co.*, 2018 WL 6619983, at *12 (N.D. Cal. Dec. 18, 2018) (reasoning that courts may "award attorneys a percentage of the common fund in lieu of the often more time-consuming task of calculating the lodestar"); *In re Bluetooth*, 654 F.3d at 942. The percentage approach also offers the significant benefit of aligning the interests of class counsel with the class they represent. *Cf. Kirchoff v. Flynn*, 786 F.2d 320, 325-26 (7th Cir. 1986) (a contingency fee

"automatically aligns interests of lawyer and client, rewards exceptional success, and penalizes failure"). The percentage method also mimics the private marketplace where contingent fee plaintiffs' attorneys are customarily compensated 33-40%.

To apply the percentage method, the Court selects a reasonable percentage that takes into account all the circumstances of the case, then multiplies the gross settlement amount by that percentage and awards class counsel the resulting amount. Based on empirical research, the majority of fee awards range between 25% and 35%. *See, e.g.*, Brian Fitzpatrick, *An Empirical Study of Class Action Settlements and Their Fee Awards*, 7 J. EMPIRICAL L. STUD. 811, 833, 838 (2010). Indeed, courts in this Circuit have noted that "[c]ases of under $10 Million will often result in fees above 25%." *Craft v. Cnty. of San Bernardino*, 624 F. Supp. 2d 1113, 1127 (C.D. Cal. 2008); *see also Van Kraken v. Atl. Richfield Co.*, 901 F. Supp. 294, 297-98 (N.D. Cal. 1995) (noting awards of "30-50 percent of the fund" where the funds were "less than $10 million"). Additionally, the Ninth Circuit has held that, while the 25% benchmark rate is "a starting point for analysis," courts may adjust upwards or downwards based on the particular circumstances. *See Vizcaino*, 290 F.3d at 1048; *Six (6) Mexican Workers*, 904 F.2d at 1311 ("[T]he benchmark percentage should be adjusted, or replaced by a lodestar calculation, when special circumstances indicate that the percentage recovery would be either too small or too large in light of the hours devoted to the case or other relevant factors.").

Here, as explained below, the requested fee of 23.5% of the total $1,525,000 in Settlement Consideration is fair and reasonable under all circumstances of this case.

### B. Class Counsel's Efforts Justify the Requested Fee Amount.

Here, Class Counsel has aggressively prosecuted this Action and warded off attacks by experienced counsel. Class Counsel's efforts were clearly effective, as evidenced by Plaintiffs' arrival at a bargaining position strong enough to negotiate a Settlement valued, in total, at $1.525 million. The Settlement provides the Class with significant monetary

relief via the $825,000 non-reversionary settlement fund and $700,000.00 worth of remedial relief that addresses the data security failures that led to the Data Breach and resulting claims in this Action.

For their efforts, Class Counsel's fee award should be based on the total Settlement Consideration, $1,525,000, which includes the hard-won remedial relief component. The Ninth Circuit has held that courts should "take into account the present nonmonetary benefit bestowed upon plaintiffs' class" when evaluating the appropriateness of a fee award. *Loring v. City of Scottsdale*, 721 F.2d 274, 275 (9th Cir. 1983); *see also Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 392-93 (1970) (concluding that attorneys' fees may be awarded when the litigation has conferred a substantial benefit on the class even where a suit "has not yet produced, and may never produce, a monetary recovery" under the "common fund" doctrine). Indeed, courts in this Circuit have included the value of remedial relief in the total settlement value when applying the percentage-of-recovery method. For example, in a false advertising class action, a court included the value of the remedial relief ($1.4 million) when calculating the overall value of the settlement ($10.4 million) for purposes of determining whether counsel's fee request was fair and reasonable under the percentage-of-recovery method. *Pappas v. Naked Juice Co of Glendora, Inc.*, 2014 WL 12382279, at *10 (C.D. Cal. Jan. 2, 2014). Ultimately, the court awarded fees to counsel equaling 24.8% of the total value of the settlement including remedial relief, a notch above the 23.5% of the total value of the $1,525,000 Settlement Consideration requested here. *Id.*; *see also Cox v. Clarus Mktg. Grp., LLC*, 291 F.R.D. 473, 483 (S.D. Cal. 2013) (awarding fee request of 24.1% of total settlement value); *In re Wawa, Inc. Data Sec. Litig.*, 2022 WL 1173179, at *9 n.4 (E.D. Pa. Apr. 20, 2022) (finding that the non-monetary benefits should be considered in total value of the settlement). Likewise, in a recent data breach class action in this Circuit, the court awarded 23.5% of the total settlement value of $9,760,000 (including remedial measures valued at $4,700,000), which ***amounted to a fee***

***award of 45.45% of the common fund***. *See In re: Solara Medical Supplies Data Breach Litig.*, Case No. 3:19-cv-02284 (S.D. Cal., Sept. 12, 2023) (Doc. No. 150).

Even in settlements where the non-monetary benefits are unquantifiable, such nonmonetary benefits are nevertheless a relevant consideration under the percentage method.[1] Indeed, courts in this Circuit routinely grant upward departures from the 25% benchmark where settlements include both monetary compensation and remedial relief that significantly remedies the corporate policies that gave rise to the lawsuit. *See In re Anthem*, 2018 WL 3960068, at *8 ("[T]he Court elects to consider the value of this nonmonetary relief as a relevant circumstance in determining what percentage of the common fund class counsel should receive as attorneys' fees"); *Smith v. Am. Greetings Corp.*, 2016 WL 362395, at *8-9 (N.D. Cal. Jan. 29, 2016) ("In addition to compensating Plaintiffs . . . , class counsel's efforts have remedied many of the corporate policies that led to this lawsuit. These benefits support an upward departure from the Ninth Circuit's 25% standard."); *Wren v. RGIS Inventory Specialists*, 2011 WL 1230826, at *29 (N.D. Cal. Apr. 1, 2011) (approving settlement with an average award to class members of $207.69 and ***42% of the settlement amount*** as attorneys' fees because, in part, "the results achieved . . . include ***both monetary and injunctive relief***"); *see also In re Yahoo!*, 2020 WL 4212811, at *33 ("The Court considers the value of these [nonmonetary] benefits in assessing the proper [lodestar] multiplier").

Here, the Settlement not only provides the Class with a non-reversionary settlement fund from which to draw substantial monetary benefits, but also includes remedial measures which Defendant has reliably quantified at totaling $700,000.00. Accordingly, the comprehensive result achieved in this case warrants the grant of an upward departure

---

[1]  *See Vizcaino*, 290 F.3d at 1049 (finding that "[i]ncidental or non-monetary benefits conferred by the litigation are a relevant circumstance" when determining reasonableness of a fee request under the percentage method); *Pokorny v. Quixtar, Inc.*, 2013 WL 3790896, at *1 (N.D. Cal. July 18, 2013) ("The court may properly consider the value of injunctive relief obtained as a result of settlement in determining the appropriate fee.").

from the 25% benchmark. As discussed in detail below, the circumstances of this Action also justify upward departures from the benchmark rate under many of the other factors considered by the percentage method. Given these circumstances, good reason exists for the Court to award the full amount of Class Counsel's requested fees under the percentage method, particularly since Class Counsel are only seeking fees of 23.5% of the total value of the $1,525,000 Settlement Consideration.

### C.   The *Vizcaino* Factors Support the Award Requested.

In assessing a fee award, the Ninth Circuit directs courts to consider: "(1) the results achieved; (2) the risk of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee and the financial burden carried by the plaintiffs; and (5) awards made in similar cases." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2008) (citing *Vizcaino*, 290 F.3d at 1048-50); *see also Kissel v. Code 42 Software Inc.*, No. 8:15-cv-01936, 2018 WL 6113078, at *4 (C.D. Cal. Feb. 20, 2018). These factors support the requested fee.

### 1.   Class Counsel achieved a favorable result for the Class.

"The overall result and benefit to the class from the litigation is the most critical factor in granting a fee award." *Graham v. Capital One Bank (USA), N.A.*, No. SACV 13-00743-JLS, 2014 WL 12579806, at *5 (C.D. Cal. Dec. 8, 2014) (citing *In re Omnivision*, 559 F. Supp. 2d at 1046); *see also In re Heritage Bond Litig.*, No. 02-ML-1475, 2005 WL 1594389 at *8 (C.D. Cal. June 10, 2005) ("result achieved is a major factor" in making fee award); *Vizcaino*, 290 F.3d at 1049; Federal Judicial Center, Manual for Complex Litigation, § 21.71, p. 336 (4th ed. 2022) ("fundamental focus is the result actually achieved for class members") (citation omitted). Favorable results merit a higher fee. *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d at 1046 (awarding fee of 28 percent).

Here, the Settlement provides a range of outstanding results to the Settlement Class, which the Court previously held "as being fair, reasonable, and adequate as to the Settlement Class Members . . ." Preliminary Approval Order, Doc. 47, ¶ 8; S.A. ¶¶ 3.1-3.4.

These results include both a non-reversionary common fund of $825,000.00, S.A. ¶ 2.1, from which all Settlement Class Members are eligible to receive monetary benefits and credit monitoring, as well as Defendant's agreement to implement and maintain reasonable steps valued at $700,000 to adequately secure its systems and environments. *Id*. These changes inure to the benefit of the Settlement Class, whose information remains in Defendant's possession, and directly address the alleged harms that resulted from the Data Security Incident. The Ninth Circuit has repeatedly held that where, as here, class counsel achieves significant non-monetary benefits, the court "should consider the value of [such] relief … as a relevant circumstance" in determining what percentage of the settlement benefits should be awarded as reasonable fees. *Staton*, 327 F.3d at 974 (internal quotation marks omitted); *see also Vizcaino*, 290 F.3d at 1049 (affirming enhanced fee award where "the court found that counsel's performance generated benefits beyond the cash settlement fund"); *Linney v. Cellular Alaska P'ship*, No. C-96-3008, 1997 WL 450064, at *7 (N.D. Cal. July 18, 1997), aff'd, 151 F.3d 1234 (9th Cir. 1998) (awarding fee of 1/3 of fund where settlement provided non-monetary relief).

The Settlement was particularly favorable in light of the limited resources available to fund a recovery. *See* Declaration of William B. Federman attached hereto as Exhibit 1 ("Federman Decl."), ¶ 7. Thus, the results achieved here are substantial and support the fee request.

### 2. *The litigation was risky, complex, and expensive.*

Risk is a critical factor in determining a fair fee award. *In re Omnivision*, 559 F. Supp. 2d at 1046-47 ("The risk that further litigation might result in Plaintiffs not recovering at all, particularly a case involving complicated legal issues, is a significant factor in the award of fees.") (citing *Vizcaino*, 290 F.3d at 1048). Data breach cases in particular are among the riskiest and most uncertain of all class action litigation. Such cases are innately complex. *See, e.g., In re Equifax Inc. Customer Data Sec. Breach Litig.*, No. 1:17-MD-2800, 2020 WL 256132, at *32-33 (N.D. Ga. Mar. 17, 2020) (recognizing the

complexity and novelty of issues in data breach class actions). Although nearly all class actions involve a high level of risk, expense, and complexity, *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998), data breach cases are especially so. *See, e.g., Hammond v. The Bank of N.Y. Mellon Corp.*, No. 08 Civ. 6060(RMB)(RLE), 15 2010 WL 2643307, at *1 (S.D.N.Y. June 25, 2010) (collecting cases).

This case is no exception. Carvin has emphatically denied Plaintiffs' allegations of wrongdoing, and in continued litigation will vigorously defend against Plaintiffs' claims. Indeed, due to the complicated and technical facts at issue here, as well as highly skilled opposing counsel, there are numerous substantial hurdles that Plaintiffs would have had to overcome before the Court might find a trial appropriate. Were litigation to proceed, there would be extensive briefing on a motion to dismiss, class and merits discovery, and numerous expert reports and costly depositions, all of which would present significant risks and expenses. As in any data breach class action, establishing causation and damages on a class-wide basis is largely uncharted territory and full of uncertainty. Plaintiffs also faced uncertainty with respect to obtaining and maintaining class certification and, even if this Court were to ultimately grant in full Plaintiffs' motion for class certification, the inherent risks attendant to trying a data breach class action would have only magnified the difficult legal questions at issue here. *See, e.g., In re Anthem, Inc. Data Breach Litig.*, No. 15-MD-02617-LHK, 2018 WL 3960068, at *12 (N.D. Cal. Aug. 17, 2018) ("[C]lass certification was not guaranteed, in part because Plaintiffs had a scarcity of precedent to draw on."); *In re Equifax*, 2020 WL 256132, at *33. Although Plaintiffs believe they would have prevailed in all such regards, a verdict for the defense was entirely possible.

Here, there was a very real risk that there would be little or no recovery for the Class were the litigation to proceed. The Settlement secured all money remaining in Defendant's wasting insurance policy, and Defendant advised that it would likely declare bankruptcy were the insurance policy fully depleted by continued litigation. Federman Decl., ¶ 7. Thus, a timely Settlement was crucial to obtaining a recovery for the Class.

The proposed Settlement therefore achieves a more certain and preferable result for the Settlement Class than continued litigation, as it strikes an appropriate balance between the established benefits, on the one hand, and the risks and costs associated with continued litigation, on the other. *Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*, 688 F.2d 615, 624 (9th Cir. 1982); *United States v. Armour & Co.*, 402 U.S. 673, 81-82 (1971). This factor supports the appropriateness of the requested fee award.

### 3.    Plaintiffs' Counsel performed superior quality work to achieve the Settlement.

"Courts have recognized that the 'prosecution and management of a complex national class action requires unique legal skills and abilities.'" *In re Toyota Unintended Acceleration Mktg., Sales Practices, & Prods. Liab. Litig.*, No. 8:10-ML-2151, 2013 WL 12327929, at *31 (C.D. Cal. July 24, 2012) (quoting *Knight v. Red Door Salons, Inc*., No. 08–01520 SC, 2009 WL 248367, at *6 (N.D. Cal. Feb. 2, 2009)). When evaluating this factor, the "single clearest factor reflecting the quality of class counsels' services to the class are the results obtained." *In re Heritage*, 2005 WL 1594389, at *12 (citations omitted). As set forth above, the results achieved are excellent.

Moreover, in setting fee awards, courts also consider counsel's experience and skill. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998). Class Counsel are highly specialized in the field of data breach class action litigation, well credentialed, and equal to the difficult and novel tasks at hand. *See* Federman Decl., ¶ 20. Class Counsel's fee request is commensurate with that experience and skill demonstrated by Class Counsel in developing the Complaints, coordinating all the cases, researching and drafting the detailed Consolidated Complaint, and negotiating and settling the Action early. *See Vizcaino*, 290 F.3d at 1050, n.5; *Zepeda v. PayPal, Inc.*, No. C-10-2500, 2017 WL 1113293, at *20 (N.D. Cal. Mar. 24, 2017) (class counsel's consumer class action expertise allowed for a result that "would have been unlikely if entrusted to counsel of lesser experience or capability" given the "substantive and procedural complexities" and the "contentious nature" of the

settlement); *Allagas v. BP Solar Int'l, Inc.*, No. 314CV00560, 2016 WL 9114162, at *2 (N.D. Cal. Dec. 22, 2016) (class counsel that were "highly experienced in prosecuting and settling complex class actions" factors in favor of requested fee).

Class Counsel were also equal to the experience and skill of the lawyers representing Carvin. *See In re Am. Apparel, Inc. S'holder Litig.*, No. CV1006352MMMJCGX, 2014 WL 10212865, at *22 (C.D. Cal. July 28, 2014) ("In addition to the difficulty of the legal and factual issues raised, the court should also consider the quality of opposing counsel as a measure of the skill required to litigate the case successfully.") (citing *Wing v. Asarco Inc.*, 114 F.3d 986, 989 (9th Cir. 1997)). Defendant was represented in this case by a national, highly respected, national law firm (Freeman Mathis & Gary LLP) with significant resources and substantial experience defending consumer and data breach class actions. This factor, therefore, weighs in favor of the requested fee award.

### 4. Class Counsel worked on a contingent basis.

The Ninth Circuit has confirmed that a fair fee award must include consideration of the contingent nature of the fee. *See, e.g., Vizcaino*, 290 F.3d at 1050; *Lozano v. AT&T Wireless Servs.*, Inc., No. 2:02-CV-00090-CAS (AJWx), 2010 WL 11520704, at *1 (C.D. Cal. Nov. 22, 2010). Courts have long recognized that the public interest is served by rewarding attorneys who assume representation on a contingent basis with an enhanced fee to compensate them for the risk that they might be paid nothing at all for their work. *See, e.g., In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1299 (9th Cir. 1994) ("Contingent fees that may far exceed the market value of the services if rendered on a non-contingent basis are accepted in the legal profession as a legitimate way of assuring competent representation for plaintiffs who could not afford to pay on an hourly basis regardless whether they win or lose."); *Vizcaino*, 290 F.3d at 1051 (courts reward class counsel in contingency cases "by paying them a premium over their normal hourly rates"). This factor deserves particular weight under the unique circumstances of this matter. If Class Counsel had been able to negotiate a fee directly with Class Members, a 23.5%

combined contingent fee percentage would have been eminently reasonable, if not low, for a case this complex, risky, and difficult.

Moreover, "[a]ttorneys are entitled to a larger fee award when their compensation is contingent in nature." *In re Toyota*, 2013 WL 12327929, at *32 (citing *Vizcaino*, 290 F.3d at 1048-50); *see also Kissel*, 2018 WL 6113078, at *5. "[W]hen counsel takes cases on a contingency fee basis, and litigation is protracted, the risk of non-payment after years of litigation justifies a significant fee award." *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 261 (N.D. Cal. 2015). The potential of receiving little or no recovery weighs in favor of the requested fee. *See In re Wash. Pub. Power*, 19 F.3d at 1299; *Ching v. Siemens Indus.*, No. 11-CV-04838-MEJ, 2014 WL 2926210, at *8 (N.D. Cal. June 27, 2014) ("Courts have long recognized that the public interest is served by rewarding attorneys who assume representation on a contingent basis with an enhanced fee to compensate them for the risk that they might be paid nothing at all for their work."); *Brown v. 22nd Dist. Agric. Ass'n*, No. 15-CV-02578-DHB, 2017 WL 3131557, at *8 (S.D. Cal. July 24, 2017) (recognizing that "class counsel was forced to forego other employment in order to devote necessary time to this litigation" and the substantial risk associated with taking the matter on a contingent basis warranted "an upward adjustment to the fee award"). Here, Defendant adamantly denied (and continues to deny) any wrongdoing, much less a legal entitlement to class certification or any recovery. The path to establishing liability was particularly challenging given these risks. Class Counsel expended significant resources despite the genuine risk that they would never be compensated at all—not only in this litigation, but also with competing cases in other districts that could have settled without Class Counsel foregoing that other work to focus on this case. Class Counsel prosecuted this matter on a purely contingent basis, agreeing to advance all necessary expenses and agreeing that they would only receive a fee if there was a recovery. To date, Class Counsel have received no compensation at all litigating this case. Moreover, Class Counsel faced a Defendant intent

on vigorously fighting the litigation and represented by experienced counsel. The risk of non-recovery is sufficiently substantial to justify the instant fee request.

### 5. *Fees awarded in comparable cases exceed those requested here.*

Comparing the requested fees to awards in similar cases highlights the reasonableness of this application. "Empirical studies show that, regardless whether the percentage method or the lodestar method is used, fee awards in class actions average around one-third of the recovery." *Romero v. Producers Dairy Foods, Inc.*, No. 1:05-cv-0484, 2007 WL 3492841, at *4 (E.D. Cal. Nov. 14, 2007) (quoting 4 Newberg and Conte, NEWBERG ON CLASS ACTIONS § 14.6 (4th ed. 2007)). "Under the percentage method, California has recognized that most fee awards . . . are 33 percent ...." *Smith v. CRST Van Expedited, Inc.*, No. 10-CV-1116-IEG, 2013 WL 163293, at *5 (S.D. Cal. 2013). Indeed, the Ninth Circuit has repeatedly found attorneys' fee awards of 33% of the recovery to be fair and reasonable. *See, e.g., In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000) (affirming fee award of one-third of total recovery); *In re Pac. Enters. Secs. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (affirming 33% award); *Williams v. MGM-Pathe Comms. Co.*, 129 F.3d 1026, 1027 (9th Cir. 1997) (same).

Here, the fee request represents 23.5% of the Settlement Consideration. This request is reasonable and well within the range regularly awarded by courts in this District and the Ninth Circuit. *See, e.g., Jordan v. Freedom Nat'l Ins. Servs. Inc.*, No. CV-16-00362, 2017 WL 10185526, at *2 (D. Ariz. July 20, 2017) (Rayes, J.) (approving fees and expenses totaling 41% of common fund); *Avila v. LifeLock Inc.*, No. 2:15-CV-01398, 2020 WL 4362394, at *1 (D. Ariz. July 27, 2020) (awarding fees of 30% of $20 million fund).[2]

---

[2] *See also Syed v. M-I, LLC*, No. 1:12-cv-1718, 2017 WL 3190341, at *8 (E.D. Cal. July 27, 2017) (awarding one-third of $7 million common fund); *Dearaujo v. Regis Corp.*, No. 2:14-cv-01408, 2017 WL 3116626, at *13 (E.D. Cal. July 21, 2017) (awarding one-third of recovery); *Lee v. JPMorgan Chase & Co.*, No. 13-cv-511, 2015 WL 12711659, at *8-9 (C.D. Cal. Apr. 28, 2015) (same); *Boyd v. Bank of Am. Corp.*, No. SACV 13–0561, 2014 WL 6473804, at *10-11 (C.D. Cal. Nov. 18, 2014) (same); *Burden v. Select Quote Ins. Servs.*, No. C 10-5966, 2013 WL 3988771, at *5 (N.D. Cal. Aug. 2, 2013) (same); *Barbosa*

In addition, the requested fee is at the low end of the prevailing percentage for standard contingency-fee agreements in individual cases. *See Vizcaino*, 290 F.3d at 1049. Surveys have estimated that contingency-fee percentages in individual litigation start at 33% and go up to 40%. *See, e.g.*, Lester Brickman, *ABA Regulation of Contingency Fees: Money Talks, Ethics Walks*, 65 Fordham L. Rev. 247, 248 (1996) ("standard contingency fees" are "usually thirty-three percent to forty percent of gross recoveries"). Accordingly, this factor supports the requested fee here.

### 6. *The reaction of the Settlement Class supports the fee.*

The reaction by Settlement Class Members to Class Counsel's fee request further supports finding the fee request reasonable. *See In re Heritage*, 2005 WL 1594389, at *15. As of the filing of this motion, there have been no objections filed. Federman Decl., ¶ 10. This reflects a highly positive response by the Settlement Class. *See, e.g., Garner v. State Farm Mut. Auto. Ins. Co.*, No. CV 08 1365 CW EMC, 2010 WL 1687832, at *14 (N.D. Cal. Apr. 22, 2010) (N.D. Cal. Apr. 22, 2010) (finding that only one objector to settlement and fee request represented an "overwhelmingly positive" response from the class of 24,358 members); *In re Toys R Us-Delaware, Inc.--Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 456 (C.D. Cal. 2014) ("The negligible number of opt-outs and objections indicates that the class generally approves of the settlement.").

### D. A Lodestar Cross-Check Confirms the Reasonableness of the Fee.

Application of the lodestar method as a cross-check confirms the reasonableness of the fees requested here. *See Vizcaino*, 290 F.3d at 1050-51 ("Calculation of the lodestar,

---

*v. Cargill Meat Sols. Corp.*, 297 F.R.D. 431, 454 (E.D. Cal. 2013) (same); *Franco v. Ruiz Food Prods.*, Inc., No. 1:10-cv-02354, 2012 WL 5941801, at *25 (E.D. Cal. Nov. 27, 2012) (same); *Singer v. Becton Dickinson Co.*, No. 08-CV-821, 2010 WL 2196104, at *8 (S.D. Cal. June 1, 2010) (awarding 33% and citing similar awards); *Stuart v. Radioshack Corp.*, No. C-07-4499, 2010 WL 3155645, at *8 (N.D. Cal. Aug. 9, 2010) (awarding one-third); *Fernandez v. Victoria's Secret Stores, LLC*, No. CV 06-04149, 2008 WL 8150856, at *16 (C.D. Cal. July 21, 2008) (awarding 34%); *Wren v. RGIS Inventory Specialists*, No. 06-cv-05778, 2011 WL 1230826, at *27-28 (N.D. Cal. Apr. 1, 2011) (awarding 42% of $27 million fund).

which measures the lawyers' investment of time in the litigation, provides a check on the reasonableness of the percentage award."). As described in paragraph 17 of the Federman Decl., Plaintiffs' Counsel and their respective staffs have devoted a total of approximately 554.3 hours to this litigation and have a total lodestar to date of $345,963.10. This represents a very modest 1.04 risk multiplier based on the requested fee. *Id.* Courts in the Ninth Circuit routinely approve similar (and much higher) multipliers. *Mejia v. Walgreen Co.*, No. 2:19-CV-00218 WBS AC, 2021 WL 1122390, at *8 (E.D. Cal. Mar. 24, 2021) (discussing approval of lodestar multipliers from 2.0 to 4.5 and noting that risk multipliers "between 3 and 4.5 have become more common") (citations omitted); *Vizcaino*, 290 F.3d at 1052 appx. (finding that risk multipliers range between 1.0 and 4.0 in 83% of cases). Plaintiffs' Counsel's time was reasonable and necessary for the prosecution of this Action. Class Counsel took meaningful steps to ensure the efficiency of their work. Federman Decl., ¶ 18. Further, these amounts do not include the additional time that Class Counsel will have to spend through the Final Approval Hearing and beyond, including preparing the final approval motion, attending the final approval hearing, and overseeing the distribution of Settlement benefits to the Class. *Id.*, ¶ 17.

Class Counsel brought to this Action extensive experience in the area of data breach class actions and complex litigation. Federman Decl., ¶ 12; *see also* Doc. 37-2, Ex. A-C. Class Counsel's customary rates are in line with prevailing rates in this District, have been approved by courts in this District and other courts, and are in line with the rates charged by contemporaries in the data breach bar. *Id.*, ¶ 19. The lodestar cross-check thus confirms the reasonableness of the requested fee award, particularly in light of the significant results achieved by the Settlement, the contingent nature of Class Counsel's representation, and the skill and expertise Class Counsel employed to achieve this favorable Settlement.

### E.    The litigation expenses should be reimbursed.

"Attorneys may recover their reasonable expenses that would typically be billed to paying clients in non-contingency matters." *Kissel*, 2018 WL 6113078, at *6. This includes

reasonable expenses, related to the litigation, and normally charged to a fee-paying client. *Willner v. Manpower Inc.*, No. 11-cv-02846, 2015 WL 3863625, at *7 (N.D. Cal. June 22, 2015). Here, Settlement Class Counsel request reimbursement of expenses of in the amount of $8,867.85. Federman Decl., ¶¶ 17, 22, 26. This amount does not include internal and other additional costs that Class Counsel incurred in this Action but, in an exercise of discretion, do not seek to recover. *Id.*, ¶ 17. If awarded by the Court, the expenses would be in addition to the $358,375 in fees requested here.

The $8,867.85in expenses incurred as of the filing of this Motion represents what Class Counsel's actual out-of-pocket litigation costs for items such as filing fees, mediation fees, legal research, and travel. These expenditures were necessary to Class Counsel's prosecution of the action and are particularly reasonable given the complexities of this case. Such costs are regularly billed to clients in hourly fee cases, and routinely awarded in contingency fee cases. *See, e.g., In re Yahoo! Inc. Customer Data Breach Litig.*, No. 16-MD-02752, 2020 WL 4212811, at *42 (N.D. Cal. July 22, 2020) (approving reimbursement of expenses related to expert witness fees, case-related travel, transcript fees, document management, copying, mailing, and serving documents, electronic research, and filing and court fees); *In re Capacitors Antitrust Litig.*, No. 14-cv-03264, 2018 WL 4790575, at *6 (N.D. Cal. Sept. 21, 2018) ("Reasonable reimbursable litigation expenses include: those for document production, experts and consultants, depositions, translation services, travel, mail and postage costs."); *In re Lenovo Adware Litig.*, No. 15-md-0624, 2019 WL 1791420, at *9 (N.D. Cal. April 24, 2019) (reimbursing counsel's "professional service fees (experts, investigators, accountants), travel fees, and discovery-related fees").

## F.    The Court should grant Service Awards.

Class Counsel also requests that the Court approve service awards in the amount of $1,500 for each of the five Class Representatives ($7,500 total). Federman Decl., ¶ 24. Service awards are typically awarded in class actions, and "are intended to compensate

class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009).

Plaintiffs expended considerable effort on behalf of the Class, including answering detailed questionnaires via vetting interviews; providing essential information to Plaintiffs' Counsel; collecting documents and other evidence that supported their claims; agreeing to face invasive and time-consuming discovery, if necessary; reviewing pleadings and coordinating with Plaintiffs' Counsel as to the status of, and strategy for, the Action; conferring with Plaintiffs' Counsel about the settlement negotiations and providing meaningful input about what potential benefits were most important to them; and considering and approving the Settlement terms on behalf of the Class. *Id*. Their commitment to the Class's interests and desire to remedy these issues warrants recognition in the form of the Service Awards requested, which fall at the lower end of the spectrum of amounts awarded in comparable cases. *See, e.g., Hawthorne v. Umpqua Bank*, No. 11-6700, 2015 WL 1927342, at *8 (N.D. Cal. Apr. 28, 2015) ("Many courts in the Ninth Circuit have also held that a $5,000 incentive award is 'presumptively reasonable.'"); *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 457, 463 (9th Cir. 2000) (same); *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d at 943 (same).

## IV.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court approve Class Counsel's request for: (i) attorneys' fees of $358,375 and expense reimbursement of $8,867.85; and (ii) service awards of $1,500 to each of the five Class Representatives. A proposed order will be submitted contemporaneously with Plaintiffs' eventual motion for final approval of the Settlement.

17

Date: July 12, 2024                          Respectfully Submitted,

                                             By: *s/ William B. Federman*
                                             William B. Federman*
                                             FEDERMAN & SHERWOOD
                                             10205 N. Pennsylvania Ave.
                                             Oklahoma City, OK 73120
                                             T: (405) 235-1560
                                             E: wbf@federmanlaw.com

                                             A. Brooke Murphy*
                                             MURPHY LAW FIRM
                                             4116 Will Rogers Pkwy, Suite 700
                                             Oklahoma City, OK 73108
                                             T: (405) 389-4989
                                             E: abm@murphylegalfirm.com

                                             Mason A. Barney*
                                             SIRI & GLIMSTAD LLP
                                             745 Fifth Avenue, Suite 500
                                             New York, New York 10151
                                             T: (646) 357-1732
                                             E: mbarney@sirillp.com

                                             *Interim Co-Lead Class Counsel*

                                             ***Admitted pro hac vice***

## CERTIFICATE OF SERVICE

     I HEREBY CERTIFY that on July 12, 2024, I electronically filed the foregoing
with the Clerk of the Court using the CM/ECF system which will send notification of
such filing to the e-mail addresses denoted on the Electronic Mail notice list.

                                             /s/ William B. Federman
                                             William B. Federman

18