Mason A. Barney (admitted *pro hac vice*)
Tyler J. Bean (admitted *pro hac vice*)
**SIRI & GLIMSTAD LLP**
745 Fifth Avenue, Suite 500
New York, New York 10151
Tel: (212) 532-1091
E: mbarney@sirillp.com
E: tbean@sirillp.com

A. Brooke Murphy (admitted *pro hac vice*)
**MURPHY LAW FIRM**
4116 Will Rogers Pkwy, Suite 700
Oklahoma City, OK 73108
T: (405) 389-4989
E: abm@murphylegalfirm.com

William B. Federman (admitted *pro hac vice*)
**FEDERMAN & SHERWOOD**
10205 N. Pennsylvania Ave.
Oklahoma City, OK 73120
T: (405) 235-1560
E: wbf@federmanlaw.com

*Counsel for Plaintiffs and the Proposed Class*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| AMANDA PEREZ, et al., individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CARVIN WILSON SOFTWARE, LLC d/b/a CARVIN SOFTWARE, LLC<br><br>Defendant. | Case No.: 2:23-CV-00792-SMM<br><br>Consolidated with:<br><br>2:23-cv-00808; 2:23-cv-00824; 2:23-cv-00828; 2:23-cv-00845<br><br>**UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND MEMORANDUM IN SUPPORT** |

# TABLE OF CONTENTS

I.      INTRODUCTION ...................................................................................................1

II.     INCORPORATION BY REFERENCE ...............................................................2

III.    SUMMARY OF THE SETTLEMENT ...............................................................2

IV.     LEGAL STANDARD............................................................................................3

V.      ARGUMENT .........................................................................................................4

        A.    The Settlement Satisfies Rule 23(a)............................................................5

        B.    The Settlement Satisfies All the Rule 23(e)(2) Factors ............................5

              1.    The Class Was Adequately Represented ..........................................5

              2.    The Settlement was Negotiated at Arm's Length ..........................6

              3.    The Relief is Adequate Under Rule 23(e)(2)(C).............................6

                    i.     The Costs, Risk, And Delay of Trial and Appeal ...........................6

                    ii.    The Method of Distributing Relief Is Effective ..............................7

                    iii.   The Terms Relating to Attorneys' Fees Are Reasonable.................8

                    iv.    Any Agreement Required To Be Identified Under Rule 23(e)(3) ...8

              4.    The Proposed Settlement Treats Class Members Equitably ......................8

        C.    The Settlement Satisfies All of the *Bluetooth* Factors ...............................8

              1.    The Strength of Plaintiffs' Case.......................................................8

              2.    Risk, Expense, Complexity, and Duration of Further Litigation................9

              3.    The Risk of Maintaining Class Action Status Through Trial ...................10

              4.    The Amount Offered in Settlement...............................................11

              5.    The Extent of Discovery Completed and the Stage of
                    Proceedings ...................................................................................12

              6.    The Experience and Views of Counsel ..........................................12

              7.    Governmental Participants..............................................................13

8.    The Positive Reaction of the Class Favors Final Approval ........................13

9.    Lack of Collusion Among the Parties ..........................................................14

VI.    NOTICE SATISFIED DUE PROCESS AND RULE 23 ....................................................14

VII.    CONCLUSION ..........................................................................................................................15

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **TABLE OF AUTHORITIES**

**CASES**

*Adlouni v. UCLA Health Systems Auxiliary, et al.*,
   No. BC 589243 (Cal. Super. Ct. June 28, 2019)....................................................... 12

*Amchem Prod., Inc. v. Windsor*,
   521 U.S. 591 (1997)........................................................................................................ 5

*Billittri v. Securities America, Inc*.,
   Nos. 3:09-cv-01568-F, 3:10-cv-01833-F, 2011 WL 3586217 (N.D. Tex. Aug. 4, 2011) ........ 15

*Brown v. Transurban USA, Inc.*,
   318 F.R.D. 560 (E.D. Va. 2016) ................................................................................... 5

*Calderon v. Wolf Firm*, No. SACV 16-1622-JLS(KESx),
   2018 WL 6843723 (C.D. Cal. Mar. 13, 2018) ............................................................ 12

*Chester v. TJX Cos*., No. 5:15-cv-01437-ODW(DTB),
   2017 WL 6205788 (C.D. Cal. Dec. 5, 2017) ............................................................... 9

*Class Plaintiffs v. City of Seattle*,
   955 F.2d 1268 (9th Cir. 1992) ...................................................................................... 5

*Cochran v. Accellion, Inc., et al*.,
   No. 5:21-cv-01887 (N.D. Cal.) (June 30, 2021) ....................................................... 12

*Dennis v. Kellogg Co*.,
   No. 09-cv-1786-L(WMc), 2013 WL 6055326 (S.D. Cal. Nov. 14, 2013) ................. 9

*Dickey's Barbeque Restaurants, Inc.*,
   Case No. 20-cv-3424 (N.D. Tex.) ............................................................................... 12

*Espinosa v. United Student Aid Funds, Inc.*,
   553 F.3d 1193 (9th Cir. 2008),
   aff'd, 559 U.S. 260, 130 S. Ct. 1367, 176 L. Ed. 2d 158 (2010) .............................. 16

*Fehlen v. Accellion, Inc.*,
   Case No. 21-cv-01353 (N.D. Cal.) .............................................................................. 12

*Fox v. Iowa Health Sys*.,
   No. 3:18-CV-00327-JDP, 2021 WL 826741 (W.D. Wis. Mar. 4, 2021)..................... 10

*G. F. v. Contra Costa Cnty.*,
    No. 13-CV-03667-MEJ, 2015 WL 7571789 (N.D. Cal. Nov. 25, 2015) ................... 15

*Garner v. State Farm Mut. Auto. Ins. Co.*,
    No. CV 08 1365 CW EMC, 2010 WL 1687832 (N.D. Cal. Apr. 22, 2010)............................. 14

*Gordon v. Chipotle Mexican Grill, Inc.*,
    No. 17-cv-01415-CMA-SKC, 2019 WL 6972701 (D. Colo. Dec. 16, 2019)......................... 10

*Green-Cooper v. Brinker Int'l, Inc.*,
    73 F.4th 883, 890 (11th Cir. 2023) ........................................................................................ 11

*Hammond v. The Bank of N.Y. Mellon Corp.*,
    No. 08 Civ. 6060 (RMB) (RLE), 2010 U.S. Dist. LEXIS 71996 (S.D.N.Y. June 25, 2010) ... 10

*In re Anthem, Inc. Data Breach Litig.*,
    No. 5:15-md-02617 (N.D. Cal. Aug. 15, 2018)...................................................................... 12

*In re Bluetooth Headset Prods. Liab. Litig.*,
    654 F.3d 935 (9th Cir. 2011) ............................................................................................... 4, 9

*In re LinkedIn User Priv. Litig.*,
    309 F.R.D. 573 (N.D. Cal. 2015)........................................................................................... 12

*In re Target Corp. Customer Data Sec. Breach Litig.*,
    MDL No. 14-2522, 2017 WL 2178306 (D. Minn. May 17, 2017)........................................ 12

*In re The Home Depot, Inc. Customer Data Sec. Breach Litig.*,
    No. 1:14-MD02583, 2016 WL 6902351 (N.D. Ga. Aug. 23, 2016) ..................................... 12

*In re Toys R Us-Delaware, Inc.--Fair & Accurate Credit Transactions Act (FACTA) Litig.*,
    295 F.R.D. 438 (C.D. Cal. 2014) .......................................................................................... 14

*In re U.S. Office of Pers. Mgmt. Data Sec. Breach Litig.*,
    266 F. Supp. 3d 1 (D.D.C. 2017) *rev'd in part*, 928 F.3d 42 (D.C. Cir. 2019) ....................... 10

*In re: Capital One Consumer Data Breach Litigation*,
    MDL No. 1:19md2915 (AJT/JFA) (E.D. Va. Jun. 25, 2020) ................................................ 12

*In re: Lumber Liquidators Chinese-Manufactured Flooring Prod. Mktg., Sales Practices & Prod. Liab. Litig.*, 952 F.3d 471 (4th Cir. 2020)........................................................................ 6

*Leonardo's Pizza by the Slice, Inc. v. Wal–Mart Stores, Inc.*,
    544 U.S. 1044, 125 S. Ct. 2277, 161 L.Ed.2d 1080 (2005) ...................................................... 6

*Linney v. Cellular Alaska P'ship*,
    151 F.3d 1234 (9th Cir. 1998) ......................................................................................... 10, 13

*Mullane v. Central Hanover Bank & Trust Co.*,
    339 U.S. 306 (1950)............................................................................................................... 15

*Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*,
   221 F.R.D. 523 (C.D. Cal. 2004) ........................................................ 6, 13, 14

*Norton v. Maximus, Inc.*,
   No. CV 1:14-0030 WBS, 2017 WL 1424636 (D. Idaho Apr. 17, 2017) ................................. 13

*Paz v. AG Adriano Goldschmeid, Inc.*,
   No. 14CV1372DMS(DHB), 2016 WL 4427439 (S.D. Cal. Feb. 29, 2016) ........................... 11

*Phillips Petroleum Co. v. Shutts*,
   472 U.S. 797 (1985) ........................................................................... 15

*Smith v. Triad of Ala.*, *LLC*,
   No. 1:14-CV-324-WKW, 2017 WL 1044692 (M.D. Ala. Mar. 17, 2017),
   *on reconsideration in part*, 2017 WL 3816722 (M.D. Ala. Aug. 31, 2017) ........................... 11

*Stott v. Capital Financial Services*,
   277 F.R.D. 316 (N.D. Tex. 2011) ............................................................. 15

**RULES**

Federal Rules of Civil Procedure ........................................................3-6, 8, 9, 15-16

**OTHER AUTHORITIES**

4 Newberg on Class Actions
   (4th ed. 2002) ................................................................................ 5

Manual for Complex Litigation
   (Fourth)(2004) ............................................................................... 5

Plaintiffs Amanda Perez, Sasha Lipp, James Murray, Michael Halpren and Elijah Johnson ("Plaintiffs" or "Class Representatives") submit this Motion and Memorandum in Support of Plaintiffs' Unopposed Motion for Final Approval of Class Action Settlement.

## I.    INTRODUCTION

On May 30, 2024, the Court granted preliminary approval of the Settlement between Plaintiffs and Defendant Carvin Wilson Software, LLC d/b/a Carvin Software, LLC ("Carvin" or "Defendant"), and ordered that notice be given to the Class. Doc. 47.

The Settlement provides a favorable result for the Settlement Class in the form of two components: (1) a $825,000.00 non-reversionary Settlement Fund, from which Settlement Relief will be provided to participating Settlement Class Members, and (2) remedial measures that have a total cost of $700,000.00. Thus, the Settlement secures Settlement Consideration of $1,525,000.00 for the benefit of the Class.[1] S.A., § 1.48.

The Parties reached this Settlement—providing meaningful benefits for the Settlement Class—only after an extensive investigation, hard-fought litigation, and arm's-length negotiations. Although Plaintiffs believe in the merits of their claims, Defendant denies all charges of wrongdoing or liability. Plaintiff's claims involve the intricacies of data security litigation (a fast-developing area in the law), and the Plaintiffs would face risks at each stage of litigation. Against these risks, Class Counsel and the Plaintiffs believe that the Settlement achieved is for the benefit of the Settlement Class.

After this Court granted preliminary approval, the Settlement Administrator—with the help of the Parties—disseminated Notice to the Settlement Class as set forth in the Settlement Agreement. Individual Notice was provided directly to Settlement Class Members via first class mail. Direct Notice reached 88.77% of the Class, easily meeting the due process standard. *See* Declaration of Christopher Leung ("Leung Decl."), attached hereto as **Exhibit 1**, ¶ 8. The Notice

---

[1] Unless otherwise stated, all capitalized terms shall have the definitions set forth in the Settlement Agreement ("S.A."). Doc. 37.

was written in plain language, providing each Settlement Class Member with information on how to make a claim, how to opt-out, and how object to the Settlement. *Id*. ¶¶ 6-7. Out of 187,276 Class Members, absolutely **no** Class Members have sought to be excluded from the Settlement, and **no** Class Members have objected to any aspect of the Settlement. *Id*. ¶¶ 13-14.

Plaintiffs now respectfully request that the Court grant final approval of the Settlement and also grant the request for attorneys' fees, expenses and service awards.

**II.    INCORPORATION BY REFERENCE**

In the interest of efficiency, for factual and procedural background on this case, Plaintiffs refer this Court to and hereby incorporate Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement and Memorandum in Support filed on April 17, 2024. Doc. 37.

**III.    SUMMARY OF THE SETTLEMENT**

Under the Settlement, all Class Members are eligible to submit a claim to receive one or more of the following categories of Settlement Relief, which shall be paid or funded out of the Settlement Fund:

Lost Time Compensation: Settlement Class Members may also submit a Claim for reimbursement for time they spent addressing the Data Breach or its impacts. Class members may submit claims for up to four (4) hours of lost time, to be compensated at a rate of $20 per hour, with a simple attestation that they spent the claimed time responding to issues raised by the Data Breach. S.A. § 3.3.

Reimbursement of Out-of-Pocket Losses: Settlement Class Members may also submit a Claim for reimbursement of documented out-of-pocket losses incurred as a result of the Data Breach, up to a maximum of $8,500.00 per Settlement Class Member. Such Loss Claims will reimburse Class Members for expenses such as: (i) fees for credit reports, credit monitoring, or other identity theft insurance product; (ii) costs associated with cancelling a credit card or closing a financial account; and (iii) other expenses or losses fairly traceable to the Data Breach. *Id.* § 3.2.

<u>Credit Monitoring Services</u>: Settlement Class Members may also enroll in two (2) years of credit monitoring and identity theft protection with $1 million in insurance to cover the costs of any future identity theft. *Id.* ¶ 3.1.

*<u>Pro Rata</u> Cash Payments*: All Settlement Class Members who submit a claim are also eligible to receive a *pro rata* portion of the Settlement Fund, the amount of which will be determined by the number of claims submitted. *Id*. § 3.4.

In addition, the Settlement requires Defendant to implement and/or maintain remedial data security improvements designed to help protect Defendant from a future data breach. *Id*. § 7.1. The total cost of such remedial measures is $700,000.00 to be incurred by Defendant as a result of this Action and pursuant to the terms of the Settlement reached by the Parties. *Id*. § 7.3. The cost of these remedial measures are being paid by Defendant separate and apart from the Settlement Fund. All Settlement Class Members will benefit from these business practice changes and remedial measures aimed at preventing further unauthorized access to their sensitive personal information entrusted to Carvin.

Pursuant to the Settlement, Carvin will also pay for the costs of class notice and settlement administration as well as for attorneys' fees, reimbursement of litigation expenses, and service awards to Plaintiffs, as approved by the Court. These costs will be paid by Carvin from the Settlement Fund.  *Id*. §§ 8, 11.4.

## IV.    LEGAL STANDARD

Plaintiffs bring this motion pursuant to Federal Rules of Civil Procedure Rule 23(e), under which a class action may not be settled without approval of the Court. In determining whether to finally approve a class action settlement, courts must first determine that the settlement class, as defined by the parties, is certifiable under the standards of Rule 23(a) and (b). This Court has considered and granted preliminary approval of class certification. Doc. 47. For the same reasons described in Plaintiffs' Unopposed Motion for Preliminary Approval of Settlement (Doc. 37), this Court should certify the class for purposes of final approval of the settlement.

Next, for a settlement to be approved under Rule 23(e)(2), the Court must determine, after

holding a hearing, that it is fair, adequate, and reasonable. In making this determination, the Court must consider whether:

    (A) the class representatives and class counsel have adequately represented the class;

    (B) the proposal was negotiated at arm's length;

    (C) the relief provided for the class is adequate, taking into account:

        (i) the costs, risks, and delay of trial and appeal;

        (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

        (iii) the terms of any proposed award of attorney's fees, including timing of payment; and

        (iv) any agreement required to be identified under Rule 23(e)(3); and

    (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. Rule 23(e)(2).

In addition to the Rule 23(e)(2) factors, courts in the Ninth Circuit look to nine factors in making this determination: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; (8) the reaction of the class members to the proposed settlement; and (9) whether the settlement is a product of collusion among the parties. *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011).

## V.    ARGUMENT

Federal courts strongly favor and encourage settlements, particularly in class actions and other complex matters where the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain. *See Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992) (noting the "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned"); 4 Newberg on Class

Actions § 11.41 (4th ed. 2002) (citing cases). Here, with a strong settlement that enjoys robust support from the Settlement Class, and to which there is no opposition, the Court should grant final approval to this settlement.

**A.    The Settlement Satisfies Rule 23(a)**

When assessing the parties' settlement, the Court should first confirm that the underlying settlement class meets the requirements of Rule 23(a). *See Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). Those requirements are: numerosity, commonality, typicality, and adequacy. Fed. R. Civ. P. 23(a).

As set forth in Plaintiffs' Motion for Preliminary Approval, each of these requirements is easily met here. Doc. 37 at 5-8. Indeed, in the Preliminary Approval Order, the Court preliminarily certified the Settlement Class, finding that the Class satisfies all Rule 23 requirements. Doc. 40. Nothing has changed since then that could conceivably undermine class certification. Accordingly, Plaintiffs respectfully request that the Court finally certify the Settlement Class for Settlement purposes.

**B.    The Settlement Satisfies All the Rule 23(e)(2) Factors**

**1.    The Class Was Adequately Represented**

"[T]he adequacy requirement is met when: (1) the named plaintiff does not have interests antagonistic to those of the class; and (2) plaintiff's attorneys are qualified, experienced, and generally able to conduct the litigation." *Brown v. Transurban USA, Inc.*, 318 F.R.D. 560, 567 (E.D. Va. 2016) (citation omitted). Here, the Class Representatives have the same interests as all other Settlement Class Members as they are asserting the same claims and share the same injuries. Further, the Court has already recognized Class Counsel's experience and qualifications in appointing them to lead this litigation and the record shows Class Counsel worked diligently to litigate and ultimately bring this case to resolution. *See* Order Granting Preliminary Approval, Doc. 40; *see also In re: Lumber Liquidators Chinese-Manufactured Flooring Prod. Mktg., Sales Practices & Prod. Liab. Litig.*, 952 F.3d 471, 485 (4th Cir. 2020) (finding counsel's experience in complex civil litigation supported fairness of settlement).

### 2.    The Settlement was Negotiated at Arm's Length

The negotiations in this matter occurred at arm's length. *See* Declaration of Mason A. Barney, attached hereto as **Exhibit 2** ("Barney Decl."), ¶¶ 5-8. Settlements negotiated by experienced counsel that result from arm's-length negotiations are presumed to be fair, adequate and reasonable. *See Leonardo's Pizza by the Slice, Inc. v. Wal–Mart Stores, Inc.*, 544 U.S. 1044, 125 S. Ct. 2277, 161 L.Ed.2d 1080 (2005) (a "'presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.'" (quoting MANUAL FOR COMPLEX LITIGATION (THIRD) § 30.42 (1995)).

This deference reflects the knowledge that vigorous negotiations between seasoned counsel protect against collusion and advance the fairness consideration of Rule 23(e).

### 3.    The Relief is Adequate Under Rule 23(e)(2)(C)

The relief offered to Class Members in the proposed Settlement addresses the types of repercussions and injuries arising from the Data Breach and is more than adequate under the factors outlined in Rule 23(e)(2)(C).

Class Counsel, who have meaningful experience in leading major data breach class actions, strongly believe that the relief is fair, reasonable, and adequate. The Court may rely upon such experienced counsel's judgment. *See, e.g.*, *Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) ("[T]he trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel.") (citations omitted).

#### i.    *The Costs, Risk, And Delay of Trial and Appeal*

As outlined in the preliminary approval motion and motion for attorneys' fees, Plaintiffs faced significant risks and costs should they have continued to litigate the case. First, there was a risk that Plaintiffs' claims would not have survived, or survived in full, on a class-wide basis after a motion for class certification, motions for summary judgment, and Daubert motions on damages methodologies, among other motions. Second, if Plaintiffs prevailed on a motion for class certification, successfully defeated all the other objections and motions Defendant filed, and

proceeded to trial, Plaintiffs still would have faced significant risk, cost, and delay including likely interlocutory and post-judgment appeals. Finally, Defendant is a small company with very modest revenues. Barney Decl. ¶ 5. As a result of the Data Breach, Carvin's business (and revenue) further declined. *Id.* Moreover, through informal discovery, Proposed Class Counsel were informed that Carvin has only a small wasting insurance policy applicable to the Data Breach. *Id.* Due to Carvin's precarious financial state and inadequate insurance policy applicable to the litigation, it was highly uncertain what ability (if any) Carvin would have to fund a larger recovery for Plaintiffs and the Class.

In contrast to the risk, cost, and delay posed by proceeding to trial, the proposed Settlement provides certain, substantial, and immediate relief to the proposed Settlement Class. It ensures that Settlement Class Members with valid claims for Out-of-Pocket Losses or Lost Time will receive guaranteed compensation now and provides Settlement Class Members with access to credit monitoring and identity theft protection services (benefits that may not have been available at trial). The substantial costs, risk, and delay of a trial and appeal support a finding that the proposed Settlement is adequate.

### ii.    The Method of Distributing Relief Is Effective

The proposed distribution process will be efficient and effective. The available relief is detailed clearly in the Notice, which was provided to all Settlement Class Members laying out the benefits to which they are entitled, including benefits provided regardless of whether a Settlement Class Member files a claim. Leung Decl. ¶ 7 at Ex. C, thereto.

Noticing the Settlement Class of the available relief was efficient and effective. Notice included dissemination of individual notice by direct mail, in the form of the Short Form postcard notice. This direct mail notice reached approximately 88.77% of the Class. *Id.* ¶ 8. Therefore, Settlement Class Members received effective and efficient notice of the relief offered. Because Settlement Class Members were able to make claims through a simple online form or by mail, the method of distributing the relief was both efficient and effective, and the proposed Settlement is adequate under this factor.

### iii.    The Terms Relating to Attorneys' Fees Are Reasonable

Pursuant to the Settlement Agreement, Class Counsel has requested $358,375 in attorneys' fees (which represents 23.5% of the Settlement Consideration) and reimbursement for litigation expenses of $8,867.85. This fee and expense request is on par with awards routinely granted by courts in the Ninth Circuit and is supported by a lodestar crosscheck, as laid out in the previously filed attorneys' fee motion. Doc. 48. This factor supports approval of the proposed Settlement.

### iv.    Any Agreement Required To Be Identified Under Rule 23(e)(3)

Apart from the Settlement Agreement, there are no additional agreements between the Parties or with others made in connection with the Settlement.

### 4.    The Proposed Settlement Treats Class Members Equitably

The Settlement Class Members are treated equitably because they all have similar claims arising from the same data breach, and they all are treated the same under the Settlement. Fed. R. Civ. P. 23(e)(2)(D). All Settlement Class Members are eligible to claim the various benefits provided by the Settlement, including compensation for Out-of-Pocket Losses, compensation for time spent responding to the Data Breach, two years of identity protection services, and pro rata cash payments from the Settlement Fund.

Accordingly, the factors under Rule 23(e) support final approval. As discussed below, the *Bluetooth* factors are similarly satisfied.

### C.    The Settlement Satisfies All of the *Bluetooth* Factors

### 1.    The Strength of Plaintiffs' Case

Plaintiffs believe they have a strong case for liability. As described in Plaintiffs' motion for preliminary approval, Plaintiffs believe their claims are viable and that they have a reasonably good chance of proving that Carvin's data security was inadequate, which could lend itself to a finding that Defendant was liable under at least some of the theories Plaintiffs pled in their complaint. While Plaintiffs believe they have strong claims and would be able to prevail, their success is not guaranteed. It is "plainly reasonable for the parties at this stage to agree that the actual recovery realized and risks avoided here outweigh the opportunity to pursue potentially

more favorable results through full adjudication." *Dennis v. Kellogg Co.*, No. 09-cv-1786-L(WMc), 2013 WL 6055326, at *3 (S.D. Cal. Nov. 14, 2013). "Here, as with most class actions, there was risk to both sides in continuing towards trial. The settlement avoids uncertainty for all parties involved." *Chester v. TJX Cos*., No. 5:15-cv-01437-ODW(DTB), 2017 WL 6205788, at *6 (C.D. Cal. Dec. 5, 2017). However, given the heavy obstacles and inherent risks Plaintiffs face with respect to the novel claims in data breach class actions, including class certification, summary judgment, and trial, the substantial benefits the Settlement provides favors final approval of the settlement. *Id.*

### 2. Risk, Expense, Complexity, and Duration of Further Litigation

Although Plaintiffs believe their case has merit, they recognize that all cases are subject to substantial risk. This case involves: a proposed class of approximately roughly 360,781 individuals (each of whom, Carvin has argued, would need to establish cognizable harm and causation); a complicated and technical factual background; and an aggressive and motivated Defendant that already has provided some relief to the potentially affected individuals.

And even though nearly all class actions involve a high level of risk, expense, and complexity—undergirding the strong judicial policy favoring amicable resolutions, *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998)—this is an especially complex class in an especially risky arena. As one federal district court recently observed in finally approving a settlement with similar class relief:

> Data breach litigation is evolving; there is no guarantee of the ultimate result. *See Gordon v. Chipotle Mexican Grill, Inc.*, No. 17-cv-01415-CMA-SKC, 2019 WL 6972701, at *1 (D. Colo. Dec. 16, 2019) ("Data breach cases ... are particularly risky, expensive, and complex.").

*Fox v. Iowa Health Sys.*, No. 3:18-CV-00327-JDP, 2021 WL 826741, at *5 (W.D. Wis. Mar. 4, 2021). Data breach cases face substantial hurdles in surviving even the pleading stage. *See, e.g.*, *Hammond v. The Bank of N.Y. Mellon Corp.*, No. 08 Civ. 6060 (RMB) (RLE), 2010 WL 2643307, at *1 (S.D.N.Y. June 25, 2010) (collecting cases). Even cases of similar notoriety and implicating data far more sensitive than at issue here have been found wanting at the district court level. *In re*

1    *U.S. Office of Pers. Mgmt. Data Sec. Breach Litig.*, 266 F. Supp. 3d 1, 19 (D.D.C. 2017) ("The

2    Court is not persuaded that the factual allegations in the complaints are sufficient to establish . . .

3    standing."), *rev'd in part*, 928 F.3d 42 (D.C. Cir. 2019) (holding that plaintiff had standing to bring

4    a data breach lawsuit).

5        To the extent the law has gradually accepted this relatively new type of litigation, the path

6    to a class-wide monetary judgment remains unforged, particularly in the area of damages. For now,

7    data breach cases are among the riskiest and most uncertain of all class action litigation, making

8    settlement the more prudent course when a reasonable one can be reached. The damages

9    methodologies, while theoretically sound in Plaintiffs' view, remain untested in a disputed class

10    certification setting and unproven in front of a jury. And as in any data breach case, establishing

11    causation on a class-wide basis is rife with uncertainty.

12        Moreover, because Carvin is a small company with a very limited wasting insurance policy,

13    there was substantial risk that continued litigation would further deplete the already limited

14    resources available to fund a recovery for the Class.

15        Each risk, by itself, could impede the successful prosecution of these claims at trial and in

16    an eventual appeal—which would result in zero recovery to the class. "Regardless of the risk,

17    litigation is always expensive, and both sides would bear those costs if the litigation continued."

18    *Paz v. AG Adriano Goldschmeid, Inc.*, No. 14CV1372DMS(DHB), 2016 WL 4427439, at *5 (S.D.

19    Cal. Feb. 29, 2016). Thus, this factor favors final approval.

20        **3.    The Risk of Maintaining Class Action Status Through Trial**

21        While Plaintiffs' case is still in the pleadings stage, the Court has not certified any class

22    treatment of this case. Absent settlement, class certification in consumer data breach cases has only

23    occurred in a few cases. *See, e.g., Smith v. Triad of Ala.*, LLC, No. 1:14-CV-324-WKW, 2017 WL

24    1044692, at *15 (M.D. Ala. Mar. 17, 2017), *on reconsideration in part*, 2017 WL 3816722 (M.D.

25    Ala. Aug. 31, 2017). Even when certification is granted, there are appeals. *See Green-Cooper v.

26    Brinker Int'l, Inc.*, 73 F.4th 883, 890 (11th Cir. 2023) (vacating class certification in part and

27    remanding for addition analysis on the predominance element). While certification of additional

28

consumer data breach classes may follow, the dearth of precedent adds to the risks posed by continued litigation.

### 4.    The Amount Offered in Settlement

In light of the substantial risks and uncertainties presented by data security litigation generally and this litigation specifically (as evidenced by the motions' practice in this case), the value of the Settlement strongly favors approval. The Settlement makes significant relief available to Settlement Class Members in the form of out-of-pocket expense reimbursements up to $8,500, compensation for lost time up to $80, identity theft and credit monitoring services for two years, *pro rata* cash payments, and remedial business practice changes to enhance Carvin's data security. S.A. §§ 3, 7.

The per Class Member amounts of the combined value of the Settlement are substantial, with the per-Class-Member value of the Settlement being $8.14. This is a strong result for the Class and is on par with or exceeds that of other exemplary data breach settlements.[2] These

---

[2] *See, e.g., Fehlen v. Accellion, Inc.*, Case No. 21-cv-01353 (N.D. Cal.) (settlement of $8.1 million for 9.2 million class members who had their Social Security Numbers compromised; $0.90 per class member); *Dickey's Barbeque Restaurants, Inc.*, Case No. 20-cv-3424 (N.D. Tex.), Dkt. 62 (data breach class action involving more than 3 million people that settled for $2.3 million, or $0.76 per person); *In re: Capital One Consumer Data Breach Litigation*, MDL No. 1:19md2915 (AJT/JFA) Doc. 2251 (Memo in Support of Final Approval), page 1 ($190 million common fund settlement for a class of approximately 98 million, or $1.93 per person); *Cochran v. Accellion, Inc., et al.*, No. 5:21-cv-01887 (N.D. Cal.), ECF No. 32 (June 30, 2021) ($5 million settlement fund for 3.82 million class members or approximately $1.31 per member); *Adlouni v. UCLA Health Systems Auxiliary, et al.*, No. BC 589243 (Cal. Super. Ct. June 28, 2019) ($2 million settlement in medical information data breach for approximately 4,500,000 class members; 44 cents per member); *In re Anthem, Inc. Data Breach Litig.*, No. 5:15-md-02617 (N.D. Cal. Aug. 15, 2018) ($115 million settlement in medical information data breach for 79,200,000 class members; $1.45 per member); *In re The Home Depot, Inc. Customer Data Sec. Breach Litig.*, No. 1:14-MD02583, 2016 WL 6902351, at *7 (N.D. Ga. Aug. 23, 2016) and ECF No. 181-2 ¶¶ 22, 38 ($13 million settlement for approximately 40 million class members; 32.5 cents per class member); *In re Target Corp. Customer Data Sec. Breach Litig.*, MDL No. 14-2522, 2017 WL 2178306, at **1- 2 (D. Minn. May 17, 2017) ($10 million settlement for nearly 100 million class members; 10 cents per member); *In re LinkedIn User Priv. Litig.*, 309 F.R.D. 573, 582 (N.D. Cal. 2015) ($1.25 million settlement for approximately 6.4 million class members; 20 cents per member).

comparisons are not intended to disparage the settlements achieved in those cases, but to underscore that Plaintiffs have achieved an excellent resolution for the Settlement Class.

This settlement is a strong result for the Class, and as discussed herein is in line with other approved settlements in cases involving data incidents of similar scope. *See Calderon v. Wolf Firm*, No. SACV 16-1622-JLS(KESx), 2018 WL 6843723, at *7-8 (C.D. Cal. Mar. 13, 2018) (comparing class settlement with other settlements in similar cases). In light of the difficulties and expenses Class Members would face pursuing individual claims, and the likelihood that they might be unaware of their claims, this Settlement Amount is appropriate. *See id.* Accordingly, this factor favors approval.

### 5.    The Extent of Discovery Completed and the Stage of Proceedings

Plaintiffs vigorously and aggressively gathered all of the information that was available regarding Carvin and the Data Breach—including publicly-available documents concerning announcements of the Data Breach and notice of the Data Breach to its customers. The parties also informally exchanged non-public information concerning the Data Breach and the size of the Class in preparation for mediation. Further, the parties exchanged detailed mediation statements and engaged in candid mediation discussions facilitated by experienced mediator Chris Griffin. Accordingly, the litigation has proceeded to the point where "the parties have sufficient information to make an informed decision about settlement," including an informed and realistic assessment of the strengths and weakness of their respective cases. *See Linney*, 151 F.3d at 1239.

### 6.    The Experience and Views of Counsel

Class Counsel initiated this lawsuit when Carvin announced the Data Breach, which, based upon publicly available information, potentially impacted many thousands of individuals. Class Counsel have substantial experience litigating complex class cases of various types, including data-related cases such as this one. *See* Barney Decl. ¶ 11; *see also* Doc. 37-2 at Exs. A-C (resumes of Class Counsel). Having worked on behalf of the putative class since the Data Breach was first announced, evaluated the legal and factual disputes, and dedicated significant time and monetary resources to this litigation, proposed Class Counsel fully endorse the Settlement. A great deal of

weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation. *See, e.g.*, *Norton*, 2017 WL 1424636, at *6; *Nat'l Rural Telecomm. Coop. v. DirecTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004). Thus, this factor supports approval.

### 7.    Governmental Participants

There is no governmental participant in this matter.

### 8.    The Positive Reaction of the Class Favors Final Approval

The reaction of the Settlement Class to this Settlement is overwhelmingly positive. The deadline to object or opt out of the settlement was August 16, 2024. Out of a total of 187,276 Class Members who received direct notice, **no** Class Members have sought exclusion and **no** Class Members have objected to any aspect of the Settlement. *See* Leung Decl. ¶¶ 13-14. In contrast, as of August 21, 2024, the Settlement Administrator received 1,986 Claims from Class Members seeking to receive Settlement benefits. *Id.* ¶ 12.

"It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004); 4 Newberg on Class Actions § 11:48 ("Courts have taken the position that one indication of the fairness of a settlement is the lack of or small number of objections [citations omitted]"). The fact that only one member, representing 0.00027% of the Class, has submitted an objection reflects a highly positive response by the Settlement Class. *See, e.g.*, *Garner v. State Farm Mut. Auto. Ins. Co.*, No. CV 08 1365 CW EMC, 2010 WL 1687832, at *14 (N.D. Cal. Apr. 22, 2010) (finding that only one objector to settlement and fee request represented an "overwhelmingly positive" response from the class of 24,358 members); *In re Toys R Us-Delaware, Inc.--Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 456 (C.D. Cal. 2014) ("The negligible number of opt-outs and objections indicates that the class generally approves of the settlement.").

### 9. Lack of Collusion Among the Parties

The parties negotiated a substantial, multifaceted Settlement, as described above. Class Counsel and Carvin's counsel are well-versed in handling data-related class actions such as this one and fully understand the values recovered in similar cases. The assistance of a respected third-party mediator also is evidence of no collusion. Barney Decl. ¶ 6. Therefore, the Court can be assured that the negotiations were not collusive. *See G. F. v. Contra Costa Cnty.*, No. 13-CV-03667-MEJ, 2015 WL 7571789, at *11 (N.D. Cal. Nov. 25, 2015) (working with neutral mediators is "a factor weighing in favor of a finding of non-collusiveness") (internal quotation marks and citation omitted).

## VI.    NOTICE SATISFIED DUE PROCESS AND RULE 23

To satisfy due process, notice to class members must be the best practicable, and reasonably calculated under all the circumstances to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. Fed. R. Civ. P. 23(e); *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985). Notice provided to the class must be sufficient to allow class members "a full and fair opportunity to consider the proposed decree and develop a response." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 315 (1950). While individual notice should be provided where class members can be located and identified through reasonable effort, notice may also be provided by U.S. Mail, electronic mail or other appropriate means. Fed. R. Civ. P. 23(c)(2)(B).

The direct mail Notice, utilized here, is the gold standard, and is consistent with notice programs approved by other courts. *See Stott v. Capital Financial Services*, 277 F.R.D. 316, 342, (N.D. Tex. 2011) (approving notice sent to all class members by first class mail); *Billittri v. Securities America, Inc*., Nos. 3:09-cv-01568-F, 3:10-cv-01833-F, 2011 WL 3586217, *9 (N.D. Tex. Aug. 4, 2011) (same). The Notice adequately informed Settlement Class Members of the nature of the action, the definition of the class, the claims at issue, the ability of a class member to object or exclude themselves and/or enter an appearance through and attorney, and the binding effect of final approval and class judgment. The Notice utilized clear and concise language that is

easy to understand and organized the Notice in a way that allowed Class Members to easily find any section that they may be looking for. Thus, it was substantively adequate. *See Espinosa v. United Student Aid Funds, Inc.*, 553 F.3d 1193, 1202 (9th Cir. 2008), aff'd, 559 U.S. 260, 130 S. Ct. 1367, 176 L. Ed. 2d 158 (2010) ("The standard for what amounts to constitutionally adequate notice, however, is fairly low; it's 'notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objection.'").

As outlined in detail in the Settlement Administrator's supporting declaration, the notice plan, and its execution, satisfied all the requirements of Rule 23(c). On June 28, 2024, Simpluris mailed 176,607 Postcard Notices via first-class mail. Leung Decl. ¶ 7.  Robust efforts were made to determine forwarding addresses for returned mail, and to re-mail notices to good addresses. *Id.* After all re-mailings, Simpluris reasonably believes that notice reached 166,246 of the 187,276 persons to whom the Postcard Notice was mailed, which equates to a reach rate of the direct mail notice of approximately 88.77%. *Id.* ¶ 8.  This reach exceeds other court-approved, best-practicable notice programs and Federal Judicial Center Guidelines, which state that a notice plan that reaches over 70% of targeted class members is considered a high percentage and the "norm" of a notice campaign. *Id.*

Also, the dedicated Settlement Website, www.carvinclassactionsettlement.com, "went live" on June 28, 2024. Leung Decl. ¶ 9. Simpluris also established a toll-free telephone number for Settlement Class Members to call and obtain additional information about the Settlement. *Id.* ¶ 11.

Notice here was robust, effective, and met all due process requirements, as well as the requirements of Rule 23(c).  This weighs in favor of final approval as well.

## VII.    CONCLUSION

Plaintiffs have negotiated a fair, adequate and reasonable Settlement that guarantees Settlement Class Members the opportunity to claim significant benefits. For the reasons discussed above, and for those described in Plaintiffs' Unopposed Motion for Preliminary Approval of Class

Action Settlement (Doc. 37) and Plaintiffs' Motion for Attorneys' Fees, Expenses, and Service Awards (Doc. 48), Plaintiffs respectfully request this Court enter the proposed Final Approval Order, finally certify the Settlement Class, appoint Settlement Class Counsel and Plaintiffs as representatives for the Class, award Plaintiffs service awards in of $1,500 each, award Class Counsel attorneys' fees in the amount of $358,375 and reimbursement for litigation expenses of $8,867.85, and grant final approval of this Settlement.

Date: August 23, 2024                     Respectfully Submitted,

                                          By: */s/ Mason A. Barney*
                                          Mason A. Barney*
                                          SIRI & GLIMSTAD LLP
                                          745 Fifth Avenue, Suite 500
                                          New York, New York 10151
                                          T: (646) 357-1732
                                          E: mbarney@sirillp.com

                                          William B. Federman*
                                          FEDERMAN & SHERWOOD
                                          10205 N. Pennsylvania Ave.
                                          Oklahoma City, OK 73120
                                          T: (405) 235-1560
                                          E: wbf@federmanlaw.com

                                          A. Brooke Murphy*
                                          MURPHY LAW FIRM
                                          4116 Will Rogers Pkwy, Suite 700
                                          Oklahoma City, OK 73108
                                          T: (405) 389-4989
                                          E: abm@murphylegalfirm.com

                                          *Interim Co-Lead Class Counsel*

                                          ***Admitted pro hac vice***

## <u>CERTIFICATE OF SERIVCE</u>

I hereby certify that on August 23, 2024, I electronically filed the foregoing document using the Court's electronic filing system, which will notify all counsel of record authorized to receive such filings.

*/s/ Mason A. Barney*                
